## Peter Schatz, Plff. in Err., *v.* Frank H. Kirker.[1]

Other things being fair and honest, mere inadequacy of price cannot, of itself, raise even a presumption of fraud; much less render the sale fraudulent *per se.*

S. transferred his stock of goods to his father in satisfaction of pre-existing indebtedness.   K., a creditor of S., levied an execution upon part of the stock so transferred.   Upon issue to try the title, the court affirmed the following point:   "If you find from the evidence that the assets transferred to the father were sufficient in value, after excluding those included in this levy, to fully and fairly pay the indebtedness to the father, then your verdict should be for K."   *Held,* error.

(Decided January 4, 1886.)

Error to the Common Pleas, No. 1, of Allegheny County to review a judgment for defendant in a feigned issue to try title. Reversed.

The statement as given on behalf of the plaintiff in error is

[1]NOTE.—Mere inadequacy of price will not render a contract of sale invalid.   Cumming's Appeal, 67 Pa. 404; Fritz's Appeal, 160 Pa. 156, 28 Atl. 642.   This is also true where the price stipulated to be paid is not a

as follows: December 1, 1880, Wm. F. Schatz went into partnership with Frank H. Kirker, under the firm name of F. H. Kirker & Company. Kirker had theretofore carried on the dry goods business in the city of Allegheny. Peter Schatz at that time loaned his son, William F., $5,400 to purchase an interest in the business, and this money was given to Kirker for that purpose. Afterwards, in 1881, Peter Schatz lent F. H. Kirker & Company $10,000, taking notes (one of them a judgment note) for the same. The firm became embarrassed and unable to repay the loan or any part of it, although Peter Schatz demanded payment. This led to propositions by the parties for a sale of the store to Peter Schatz, which the latter declined. The indebtedness remained unpaid, and the firm was largely in default in payment of the interest thereon. Finally, about January 18, 1883, Frank H. Kirker proposed a sale of his half interest to Wm. F. Schatz for $2,000, namely: $500 in money, and three promissory notes for $500 each, Wm. F. Schatz to assume and pay to Peter Schatz the $10,000 and accrued interest due by the firm to Peter Schatz, and also to pay all the debts and liabilities of the firm, which amounted to several thousand dollars more. To avoid a sheriff's sale of the store, and to enable the parties to make this arrangement, Peter Schatz consented, in accordance with the agreement in writing between Wm. F. Schatz and Frank H. Kirker, to release Frank H. Kirker from liability for the debt, and to accept his son in his stead. The contract was closed accordingly; the old notes were canceled, and Wm. F. Schatz gave his individual notes to his father for the indebtedness. Peter Schatz thereby became

full compensation for the services rendered or property sold. Brose's Estate, 155 Pa. 619, 26 Atl. 766; Stevens's Estate, 14 W. N. C. 488.

As to fraudulent conveyances in general, see the following editorial notes presenting the authorities on their respective subjects: Right of creditor to buy property from his debtor in satisfaction of the debt, note to Feder v. Ervin, 36 L. R. A. 335; participation by creditor in fraudulent intent of debtor which will make a transfer to pay or secure his debt invalid as to other creditors, note to Rice v. Wood, 31 L. R. A. 609; burden of proof of husband's debt to wife on account of property received from her, note to Adoue v. Spencer, 56 L. R. A. 817; participation by purchaser in fraud of vendor which will invalidate the transfer for good consideration as against the vendor's creditors, note to Kansas Moline Plow Co. v. Sherman, 32 L. R. A. 33; action by general creditor for damages against third party on account of fraud in disposing of debtor's property, or preventing plaintiff from collecting his claim, note to Field v. Siegel, 47 L. R. A. 433.

the individual creditor of his son, Wm. F., to the amount of $15,400, including the $5,400 which he had previously loaned to his son. Peter Schatz also advanced the $500 in money, being the first payment to Kirker; the three notes for $500 each were executed and delivered to Kirker, and one of them was subsequently paid to Kirker at its maturity.

The other indebtedness of Kirker & Company, which Wm. F. Schatz assumed, was found to be larger than he anticipated; but, being pressed for the payment thereof, his father, Peter Schatz, advanced him a considerable sum of money to discharge them. The indebtedness of Wm. F. Schatz to his father was thus increased to $19,804. Wm. F. Schatz, being wholly without means, except the money derived from his father, and being greatly disappointed in the value of the store he had purchased, and unable to successfully conduct the business, proposed a sale of the store to his father for the indebtedness aforesaid, amounting to $19,804, the outside debts at that time consisting of two $500 notes held by Frank H. Kirker, but not matured, and two other accounts to other parties of small amount. Peter Schatz agreed to purchase it from his son for the amount of his claim, and, on August 6, 1884, the son, by bill of sale in writing, assigned and transferred the same to his father, who thereupon took possession thereof and conducted the business in his own name, through a manager and clerks employed by him; his son immediately left the establishment and abandoned the business. Shortly thereafter the $500 note of Wm. F. Schatz to Frank H. Kirker matured; suit was brought thereon, judgment obtained, execution issued, and levy made upon goods in the store of Peter Schatz, who gave notice of his right of property. The sheriff obtained a rule upon Frank H. Kirker, the execution creditor, and Peter Schatz, the claimant, to maintain or relinquish their respective claims to the goods levied upon, and thereupon, on April 7, 1884, the rule was made absolute and an issue awarded, in which Peter Schatz, the claimant, was made plaintiff, and Frank H. Kirker, the execution creditor, defendant.

Among other things the defendant requested the court to charge as follows:

8. "If you find from the evidence in this case that other stock in the store, book accounts and other assets of W. F. Schatz, transferred to Peter Schatz, the plaintiff in this issue,

by the bill of sale of August 6, 1883, and not included in the
levy in this case, were at the time of sufficient value to fully
and fairly pay the entire indebtedness of W. F. Schatz to Peter
Schatz, then existing and not then and thereby extinguished,
then your verdict in this case should be for the defendant, F. H.
Kirker."

This point was affirmed.   The issue was found for defendant,
and plaintiff brought error.

*A. M. Brown* for plaintiff in error.

*W. A. Stone* and *J. W. Kirker* for defendant in error.

OPINION BY MR. JUSTICE GORDON:

It is alleged by the defendant in this issue that at the time he
executed to Wm. F. Schatz the bill of sale for the goods and oth-
er assets of the firm of F. H. Kirker & Company, Peter Schatz,
the claimant agreed that no claim or demand which he then had
against his son, the said Wm. F. Schatz, should be interposed to
prevent or interfere with the collection of the notes then exe-
cuted by the latter to him, the defendant.

If the facts here stated are to be taken as true, then was the
claimant estopped from asserting his right to the goods em-
braced in the present controversy, and that without regard to
the integrity of the transaction between himself and his son.  So,
if the bill of sale of the 6th of August, 1883, was designed to
hinder or delay Kirker, or any other creditor of William F.
Schatz, it was, as to Kirker, wholly void and of no effect.

Undoubtedly, it was proper, for the purpose of establishing
the alleged fraud, to prove that a debt or debts, owing from the
son to the father, which, by arrangement between the parties,
had been canceled at the time of the sale of Kirker to the for-
mer, formed part of the consideration of the alleged fraudulent
transfer.

A transaction like that stated would, to say the least of it,
present a very suspicious appearance, and a jury might well be
justified in pronouncing it fraudulent.   But it does not, by
any means, follow, as assumed by the defendant's eighth point,
that if the assets assigned to Peter Schatz by his son were suf-
ficient in value, after excluding those included in the levy which
gave rise to the contention in hand, to pay the indebtedness of

the son to the father, the verdict must, necessarily, be for the
defendant. What is here stated was well ruled to be some evi-
dence of the fraudulent intention of the parties implicated, but
it amounted to nothing more than this, and the court should
have so held. Other things being fair and honest, mere inade-
quacy of price cannot, of itself, beget even a presumption of
fraud; much less is it *per se* fraudulent.

For this reason, whilst we regard the other assignments of
error as not well taken, we feel ourselves constrained to sustain
the seventh.

The judgment is reversed and a *venire de novo* ordered.