## UTAH ASSETS CORPORATION v. DOOLEY BROS. ASS'N et al.

No. 5851.   Decided August 3, 1937.   (70 P. [2d] 738.)

578

*Thomas & Thomas,* of Salt Lake City, for appellant.

*Critchlow & Critchlow, Joel Nibley,* and *A. W. Watson,* all of Salt Lake City, for respondents.

LARSON, Justice.

The only question presented is as to whether the consideration paid by John Dooley for the real estate covered by the conveyances involved in this action was a fair consideration within the meaning of the Fraudulent Conveyance Act (Rev. St. 1933, 33-1-3). If the consideration paid was a fair consideration, the judgment must stand; if it was not, the judgment must be reversed or modified. The facts as found by the trial court, except as to the fairness of the consideration, are not assailed and stand, therefore, as undisputed and true.

Briefly, those facts are: The defendant Dooley Bros. Association was a family corporation, all stock of which was held by a mother and her children. The company owned certain property, to wit, the service station property on West Temple street in Salt Lake City, mortgaged to plaintiff about 1929 for $25,000 (by 1934 this mortgage had been reduced to about $14,000 and two vacant city lots added as additional security); the property involved in this action, known as Dooley court on East Second South street, Salt Lake City; some land of doubtful value in Iron County; and a number of judgments against persons apparently unable to pay the same; and the two vacant lots above referred to as added to plaintiff's security. From November, 1931, the mother, Georgia J. Dooley, from her own funds advanced and loaned to the company $14,179.98, evidenced by four promissory notes, carrying interest at 7 per cent. In August, 1931, John E. Dooley conveyed to the company a tract of land (which the company mortgaged to plaintiff as further security), accepting therefor the note of the company for $1,750, with 7 per cent interest; no payments were made on any of said notes, and the total amount due on the five notes on March 1,

1935, amounted to $21,338.78 principal and interest. These five notes were assigned to Joseph E. Dooley, and on March 27, 1935, he took a judgment thereon against the company for $23,363.76. On September 29, 1929, the company and John E. Dooley entered into a contract whereby he agreed to devote his time and energies towards the management of its affairs, in consideration of a salary of $150 per month plus expenses. That, except for a short period, he so devoted his time until April, 1935, at which time there was due him as unpaid salary and interest thereon the sum of $10,000. There were general taxes unpaid and delinquent on the Dooley court property amounting to $3,092.84, and current taxes, not delinquent, but a lien amounting to $1,021.56.

Plaintiff, on November 23, 1935, commenced an action against the company to foreclose its mortgage on the service station property and the two vacant lots. Immediately thereafter the company agreed to convey to plaintiff, and plaintiff agreed to accept, the property covered by its mortgage in full payment and satisfaction of the debt secured thereby, $14,000, with interest. At a meeting December 1, 1935, the stockholders and directors of the company authorized the transfer and conveyance of the mortgaged property to plaintiff in satisfaction of the mortgage indebtedness, and authorized the conveyance of the Dooley court property to Georgia J. Dooley, the mother, in trust for the purpose of sale to pay (1) the indebtedness owing to John E. Dooley; (2) the indebtedness owing to Georgia J. Dooley; and (3) the remainder, if any, to the company. The conveyance of the Dooley court property was executed and recorded. No satisfactory sale could be made of the property, and on March 30, 1935, by agreement between Georgia J. Dooley, John E. Dooley, and the company, Mrs. Dooley conveyed the Dooley court property to John E. Dooley in satisfaction of his claim and indebtedness against the company. Plaintiff concluded not to take conveyance of the property covered by its mortgage, pressed its suit, and on May 18, 1935, took its judgment against the company for $15,779.90 and a decree of fore-

closure. On June 20th the sheriff sold the property to plaintiff for $13,000 and a deficiency judgment for $2,905.30 was entered. Plaintiff then instituted this action to cancel the deeds of the Dooley property from the company to Mrs. Dooley, and from her to John E. Dooley, as made in fraud of creditors.

The foregoing matters are all found as facts by the trial court, and are not disputed, questioned, or assailed. The court made one further finding of fact, to wit, that the value of the Dooley court property, at the time of the conveyances in question, was from $14,000 to $15,000, but no purchasers available for cash, and at no time during said period could the property have been sold for more than $12,500 cash, and concluded that the consideration paid by John E. Dooley was fair and adequate; that his claim of $10,000 was a fair equivalent for the property and entered judgment for defendants. The assault upon this last finding and the conclusion stated raises the only questions on this appeal.

Appellant contends: (1) The court's finding of fact, that the value of the Dooley court property was only from $14,000 to $15,000, is not based upon any evidence in the record, and is against the weight of the evidence; (2) that the statute of limitations should have been invoked against $2,400 of John E. Dooley's claim of $10,000; (3) that the term "fair equivalent," as used in section 33-1-3, R. S. 1933, means "equal value." We shall discuss them seriatim.

1. No useful purpose could be subserved by setting out in detail the evidence upon this question. Appellant offered two real estate brokers who testified the market value of the property was about $25,000; that no purchaser could be found at that price, and it could not be sold at that price unless cut up in small pieces; that such sales would probably take intensive work and perhaps a year and a half to make the sales; that it would be necessary to spend some money on the property; based upon the rental it paid, "it would be a very unsatisfactory investment on any investment"; they made only casual inspections of the property,

just lumped the value at that price. Two real estate brokers testified for defendants. They placed the market value of the property at $16,000; testified that it could not be sold for that price; that in their judgment it would not sell for more than $12,500; that the prospect of a sale for $10,000 cash was not very good; that is would be necessary to spend about $1,100 just cleaning up and for minor repairs to sell at all; that other property paying a much better income could be bought for $15,000. Georgia J. Dooley testified that they had tried to sell the property for six months; had offered it for $12,500 but could not get it; that it had a monthly income of about $125 and an overhead of $100. From other sources it appears in the record that the rentals asked for the houses during the three years preceding the trial totaled $359 per month; that collections only amounted to about $209; that taxes, water bills, insurance, and repairs averaged $194 per month, leaving a net income of $15 per month or $180 per year. The trial court had all this evidence; it heard the witnesses, and we cannot say that the value found by the trial court of not exceeding $15,000 ($14,000 to $15,000) is not sustained by the record, or that it is contrary thereto. Appellant must therefore fail on this point.

(2) The point that the statute of limitations should have been invoked against $2,400 of the claim of John E. Dooley for $10,000 raises two hurdles in appellant's path: (a) Was the question of limitations raised? (b) Can appellant raise and urge the statute to defeat John E. Dooley's claim?

As to (a), no plea of the statute of limitations was made in the court below. It is raised for the first time in appellant's brief on this appeal. Before filing its amended complaint, plaintiff was fully advised as to the nature ■ and extent of John E. Dooley's claim. Not having presented the matter below, they cannot now raise the question here. *Smith* v. *Sinaloa Land & Fruit Co.*, 42 Utah 445, 132 P. 556; *Ogden City Corporation* v. *Industrial Comm.* (Utah) 69 P. (2d) 261.

As to (b), appellant contends that, being a creditor of the Dooley Bros. Association, it had an interest in the land, the Dooley court, and therefore could invoke the statute of limitations against other claimants to the lands for the protection of its interest. It suffices to say that appellant ██ did not invoke the statute in a timely way or manner, even though that defense had been available to it. But, when the conveyance to John E. Dooley was made, appellant had no interest in the Dooley property to protect. Its note was secured by mortgage. We cannot assume the security was then insufficient, and, until after sheriff's sale and docketing of the subsequent judgment, appellant was not a lienholder, and therefore was a stranger to the transaction. The statute of limitations is a personal right and can only be raised or asserted by the debtor or one affected by the debt against which it is invoked. At the time of the conveyance of the property to John E. Dooley, appellant had no interest in the property conveyed and could not therefore assert or set up the statute of limitations against any part of the debt in satisfaction of which he received the property. It had no interest in the property, no claim to protect, and cannot now assert that, as between the parties then interested, the statute of limitations should have been set up by the company and, therefore, this court should invoke it now without pleading or anything to bring the matter juridically before the court.

3. This brings us to appellant's final point, that the term "fair equivalent" as used in section 33-1-3, R. S. 1933 means "Equal value," and therefore any transfer of property by an insolvent is to be deemed fraudulent as to creditors unless the insolvent receives therefor the "full market value" thereof. Section 33-1-3 reads:

"Fair consideration is given for property, or obligation:

"(1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or,

"(2) When such property, or obligation, is received in good faith to secure a present advance or antecedent debt in amount not dis-

proportionately small when compared with the value of the property or obligation obtained."

Section 33-1-4: "Every conveyance made, and every obligation incurred, by a person who is, or will be thereby rendered, insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

Appellant contends that the term "fair equivalent" should be read and construed as "exact equivalent"; that is, if the antecedent debt satisfied by the transfer of the property, or the consideration paid is less than the expert's opinion of its market value, it is not a "fair equivalent" and therefore void as to creditors. No authorities are cited except Webster's definition of "equivalent" as "equal in worth or value." The statute does not say an "exact equivalent" but a "fair one." The use of the phrase "fair equivalent" instead of the "exact equivalent," or such expressions as "equal in value," suggests that the Legislature meant something other than "full value." The qualifying term here is "fair" and implies some modification of the term "equivalent." The New Merriam Webster's Unabridged Dictionary defines "fair" as "equitable as a basis for exchange; reasonable, a fair value." The same authority defines "fair market value" as "the price which would induce a willing seller to sell and a willing buyer to buy."

Generally speaking, when a statute requires the "fair cash value" of property on a certain day to be ascertained, it refers to the actual judgment of the public, as expressed in the price which some one will pay; not to what the court may think at a later time would have been a wiser opinion. It means the highest price that a normal purchaser will pay at that time to get that thing. *National Bank of Commerce of New Bedford* v. *City of New Bedford*, 175 Mass. 257, 56 N. E. 288. The evidence in this case shows that the Dooley court property could not at the time of the transfer be sold for cash for $12,500. Market value is frequently used, where a definite market value can be fixed, as a standard of value.

With respect to real estate, market value must be assumed to depend on whether a market exists or can be created by an attempt to sell the property. An opinion of market value must necessarily be intended to fix the value at which the property ought to give a fair return if sold to some one who is willing to purchase under ordinary selling conditions. At times like those involved in this action, property when thrown upon the market would find a market value much less than what was a fair valuation in better times. But, on questions of "fair equivalent" on exchange, we must take the value at the time. In re *Kobre* (D. C.) 224 F. 106. In the case of *Stern* v. *Paper* (D. C.) 183 F. 228, 230, the court says:

" 'Fair valuation,' within the meaning of subdivision 15 of section 1 of the bankruptcy act * * * means a value that can be made promptly effective by the owner of property 'to pay his debts.' * * * Such a value excludes, on the one hand, the sacrifice price that would result from an execution or foreclosure sale, and, on the other hand, the retail price that could be realized in the slow process of trade. * * * 'Fair valuation' means such a price as a capable and diligent business man could presently obtain for the property after conferring with those accustomed to buy such property."

The Supreme Court of Iowa, in *Myers* v. *Fultz*, 124 Iowa, 437, 100 N. W. 351, 352, answering the same argument as made by appellant's counsel says:

"The exact complaint is that the trial court erred in its instruction as to what constitutes a 'fair consideration' within the meaning of this federal statute, in that, in order to sustain such a conveyance, it must appear that the consideration for the transfer was a just equivalent of the thing bought. We do not think this is a proper construction of the statute. The word 'fair,' as there used, signified no more than honest or free from suspicion. It was evidently not intended as the equivalent of 'adequate,' unless the inadequacy was such as to indicate a purpose on the part of the vendor to cheat or wrong his creditors. * * * 'Fair,' as here used, manifestly means honest—free from suspicion. *Dunlop* v. *Thomas*, [28 Wash. 521], 68 P. 909. The language used in the section quoted is substantially the same as found in 13 Eliz. c. 5, and statutes following it, and should receive a like construction. In exchange, it is not necessary that the subject-matters

be of equal value. *Dygert* v. *Remerschnider*, 32 N. Y. [629], 642; *Congleton* v. *Schreihofer* (N. J. Ch.) 54 A. 144."

"Mere proof of inadequacy of price by itself has been considered insufficient to implicate the vendee in the fraudulent intent or to impeach his good faith, and inadequacy of consideration, unless extremely gross, does not per se prove fraud. It must appear that the price was so manifestly inadequate as to shock the moral sense and create in the mind at once, upon its being mentioned, a suspicion of fraud." Wait on Fraudulent Conveyances, § 232; *Dunlop* v. *Thomas*, 28 Wash. 521, 68 P. 909.

"Other things being fair and honest, mere inadequacy of price cannot, of itself, beget even a presumption of fraud, much less is it per se fraudulent." *Schatz* v. *Kirker* (Pa. Sup.) 2 A. 93.

There being no question raised as to the honesty of the transaction by which John E. Dooley received the lands involved in this action or the bona fides of his claim against the company, it must follow that the finding of the trial court, that he paid a fair consideration for the property, must stand.

There being no error in the record, the judgment is affirmed. Costs to respondent.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.