522 P.2d 54

**Leonard WILLOUGHBY and Helen Willoughby, his wife, Appellants,**

**v.**

**Wanda Alice KING, Appellee.**

**No. I CA–CIV 2083.**

Court of Appeals of Arizona, Division 1, Department B.

May 7, 1974.

---

Mariscal, Weeks, Lehman & Whitten, P. A. by Rudolph Mariscal, Phoenix, for appellants.

Cunningham, Goodson & Tiffany, Ltd. by James P. Cunningham, Phoenix, for appellee.

## OPINION

JACOBSON, Chief Judge, Division 1.

This appeal questions the propriety of granting summary judgment to the appellee and awarding to her a portion of a promissory note and imposing a lien on the balance as against alleged assignees of that note. In view of the summary disposition made by the trial court the facts shall be stated in a light most favorable to the appellants, who opposed that summary disposition.

Prior to November 21, 1969, appellee, Wanda Alice King, was married to Stanley Elwood King and had acquired a 50% community ownership of the outstanding shares of a corporation known as Security Alarm Company. Marital problems arose between appellee and her husband which resulted in a complaint for divorce being filed. This action came to trial on November 21, 1969 and was taken under advisement. While the matter was under advisement and prior to a ruling thereon, a stipulation was entered into by the parties

agreeing to dismiss the divorce action on the grounds that they were attempting a reconciliation. On January 8, 1970, the court entered an order dismissing the divorce action.

While the divorce action was under advisement, on December 31, 1969, appellee and her then husband, together with the owners of the remaining 50% of Security Alarm Company stock entered into an agreement to sell all the outstanding shares of that company to Continental Security Guard, Inc. for a total purchase price of $147,000.00. The purchase price was evidenced by a down payment and the balance by two promissory notes executed by Continental Security, each in the face amount of $69,750.00. One of these $69,750 notes was made payable to appellee and her husband as their share of the sale of their 50% interest in Security Alarm Company. Thereafter, on January 6, 1970, appellee's husband, Stanley, executed an assignment to appellee which provided:

"I, Stanley E. King . . . do hereby assign, transfer and set over to Wanda Alice King, as her sole and separate property, fifty (50%) per cent of the proceeds due Stanley E. King and Wanda Alice King and that certain contract dated the 31st day of December, 1969, for sale of their one thousand (1,000) shares of stock of Security Alarm Company; said shares of stock being sold to Continental Security Guard, Inc."

On March 9, 1970, a stipulation signed by appellee and Stanley was filed in the previously dismissed divorce action asking that the previous dismissal be set aside and that appellee's divorce complaint and her husband's counterclaim be reinstated. On March 10, 1970, the court entered an order to that effect.

Following the husband's assignment to appellee on January 6, 1970, Continental Security made payments under the note, one-half to appellee and one-half to her husband, Stanley.

Subsequently, the reinstated divorce action was tried. Although the record is not

clear in this regard, it appears that the Continental Security note was treated as having been divided, appellee owning 50% and her husband owning 50%. On June 2, 1970, a formal Judgment and Decree of Divorce was entered, granting appellee a divorce, awarding her the custody of the four minor children of the parties and ordering Stanley to pay appellee monthly alimony and child support payments. The Decree of Divorce made no division of the promissory note executed by Continental Security.

On July 21, 1970, Stanley King executed an instrument in favor of appellants, Leonard Willoughby and Helen Willoughby, which provided in part:

"That I, Stanley E. King, do hereby assign, transfer and set over to Leonard Willoughby and Helen Willoughby . . . my remaining twenty-five percent (25%) of the proceeds due Stanley E. King by the terms of that certain Promissory Note and Contract dated the 31st day of December, 1969, for the sale of one thousand (1,000) shares of stock having been sold to Continental Security Guard, Inc., said remaining interest . . . on the date of execution hereof being in the principal amount of twenty-six thousand two hundred fifty and no/100 ($26,250.00) payable at the rate of Five Hundred and no/100 Dollars ($500.00) per month." [1]

The consideration given by appellants to Stanley for the assignment of his interest in the note was the forgiveness of a $5,000.00 promissory note made to appellants on July 10, 1970 and a cash payment of $13,100.00 on July 17, 1970. It appears that on July 9, 1970, Stanley had married appellants' daughter.

On July 17, 1970, appellee filed a verified petition in the divorce action seeking to hold Stanley in contempt for failure to pay alimony and child support and to impress a lien upon Stanley's separate property for future payment. This petition, in part, stated:

"That prior to the date of decree, the parties had made division of the proceeds from the sale of the business; and there is due and owing to the defendant [Stanley] the sum of approximately $25,000 from the Continental Security Guard, Inc. . . . payable monthly to the Defendant at the rate of $500.00 per month . . . ."

On August 10, 1970, the court entered judgment against Stanley for the accrued alimony and child support then due, and impressed a lien on the proceeds of the Continental Security note for future payment and ordered that company to make all additional payments directly to appellee.

As a result of a writ of garnishment issued against Continental Security, appellee for the first time became aware of the prior assignment by Stanley to appellants of his interest in the note. On September 30, 1970, appellee filed, in the same divorce action, a complaint against Stanley, Continental Security, and appellants in that action, appellee sought relief against Continental Security by way of judgment for the amount of the writ of garnishment against it, this amount being the arrearage determined owed by Stanley under the August 10, 1970 order. As against the appellants, appellee sought to have declared void the assignment of July 23, 1970, on the grounds that it was a transfer in fraud of creditors. As against Stanley, appellee sought to have the proceeds of the promissory note not assigned to her by Stanley be declared community property and these proceeds be equally divided.

Neither Continental Security nor Stanley contested this complaint, and judgment by default was subsequently entered against them in accordance with the relief sought. Appellants answered and asserted both the validity of the assignment and that their predecessor in interest (Stanley) was enti-

---

1. These amounts represented on that date 50% of the note due from Continental Security Company to appellee and Stanley jointly.

tled to 50% of the note as his sole and separate property.

The trial court, upon a motion for summary judgment, in essence, found that appellants were not bona fide purchasers of Stanley's interest in the note; that appellee's claim to the note was superior to appellants; and that as between appellee and Stanley, appellee owned a 75% interest in the promissory note made payable jointly to both and that Stanley owned only a 25% interest in that note on which a lien was imposed. This appeal followed.

■ The first issue presented is whether the trial court on the motion for summary judgment, properly determined that appellee's claim to Stanley's portion of the note was superior to that of the appellants.[2] We first note that while the trial court made a specific finding that appellants were not holders in due course and appellee's brief devotes a great deal of space to a discussion of why appellants are not holders in due course, we deem this issue to be immaterial. This is for the simple reason that the only interest that appellants ever asserted that they held in the note was that of an assignee of a joint payee. Moreover, under the facts presented here, as between a joint payee and assignee of the other joint payee, the assignee does not need the status of a holder in due course to prevail. See A.R.S. § 44–2536.

In order for the trial court to find that Stanley's assignment to appellants was not superior to the claim of appellee on Stanley's interest in the note, it had to find on undisputed material facts, (1) that appellee's claim to Stanley's interest was prior in time to appellants, or (2) that appellants' assignment was in fraud of appellee as Stanley's creditor.

■ As to the first, it appears to be undisputed that the only claim that appellee could assert against Stanley's separate property following the divorce was for accruing child support or alimony. Such right could only arise in time on June 2,

1970, when the divorce decree was entered. However, it is clear that in the absence of a lien imposed in the decree of divorce pursuant to former A.R.S. § 25–318, any accruing support payment due under that decree or for that matter any *pendente lite* unpaid support payments would not become a lien upon the separate property of the obligor until a determinative judgment has been entered for accruals and that judgment recorded in accordance with the general judgment lien statute, A.R.S. § 33–961. McClanahan v. Hawkins, 90 Ariz. 139, 367 P.2d 196 (1961). The record is not clear whether the August 10, 1970 judgment determining Stanley's arrearage and reducing it to judgment was recorded. However, this is immaterial for Stanley had prior to the date of such a judgment, assigned his interest in his separate property to appellants on July 21, 1970. Thus, the general lien law did not made appellee's claim prior in time to that of appellants'.

■ Moreover, at the time the original decree of divorce was entered it did not, pursuant to former A.R.S. § 25–318, impress a lien on Stanley's separate property for accruing support payments. This was not done until August 10, 1970, and therefore could not affect the rights acquired by appellants on July 21, 1970. McClanahan v. Hawkins, *supra*.

Thus, it appears that the only manner in which appellee could acquire rights superior to appellants in Stanley's separate property was if Stanley's assignment on July 21, 1970, was in fraud of creditors.

A.R.S. § 44–1004 provides:

"Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration."

A.R.S. § 44–1003, insofar as pertinent here, provides that fair consideration is given, "When in exchange for such property . . . as a fair equivalent there-

---

2. At this juncture, and for the purpose of the discussion which follows, it is immaterial whether Stanley's ownership was 50% or 25% of the note in question.

for, and in good faith, property is conveyed or an antecedent debt is satisfied. . . . . "

Keeping in mind that this matter was disposed of by summary judgment, we do not need to determine whether evidence exists as to the bonafides of the parties [3] or that Stanley rendered himself insolvent by the transfer to appellants, although the evidence on these points is weak. Zeroing in on whether the amount paid was "a fair equivalent" for the property received, we are faced with two considerations. If, as appellee contends, Stanley only had a 25% interest in the note to sell, appellants paid $18,100.00 [4] for a $13,000.00 interest. Obviously, this was more than a "fair equivalent". If, however, appellants received what they thought they bought, a $26,000 interest, the question then becomes whether $18,100.00 is a "fair equivalent."

■ The term "fair equivalent" has been held not to be found by a determination of the thing sold and price received in precise scale, but all circumstances must be considered to determine whether a reasonable and fair proportion exists between them. Osawa v. Onishi, 33 Wash.2d 546, 206 P.2d 498 (1949). Thus, in the case of Utah Assets Corp. v. Dooley Bros. Ass'n., 92 Utah 577, 70 P.2d 738 (1937) the court held that property valued at $15,000 conveyed for $10,000.00 was for a fair consideration and not in fraud of creditors. Reliance on cases dealing with ratios of numbers can be misleading, however. What in reality must be considered by the court, among other things, is the current market for the commodity transferred, the length of time the assignee must wait to be made whole, and in the case of a promissory note the financial worth or solvency of the debtor, the interest on the note compared to the present market, and numerous other financial factors. For example, we note

that the present cash value of the $26,000 note in question payable over five years is $17,695.08. Lake's Monthly Installment and Interest Tables (5th Ed. 1959). There is simply no evidence in this case that such factors as enumerated were presented or considered by the trial court. In short, neither this court nor the trial court is able to say, as a matter of law, that an $8,000 discount on a $26,000 promissory note payable over a period of years is not a "fair equivalent."

■ We therefore hold that based on the record before the trial court, there were material issues of disputed fact which would preclude the trial court from determining that Stanley's assignment to the appellants was in fraud of creditors so as to make appellee's claim to Stanley's separate property superior to that of appellants.

The appellants' next contention is that the trial court could not determine, on a motion for summary judgment, that Stanley owned only a 25% interest in the proceeds of the note in question. Appellee asserts that appellants may not question this result, for there was a judgment against Stanley (by default) adjudicating, as between appellee and Stanley, that he only had a 25% interest in the note; that no appeal has been taken from that judgment; and that the judgment is now *res judicata* and cannot be collaterally attacked by appellants. The judgment which appellee contends became *res judicata* specifically makes reference to a prior judgment date November 6, 1970, which provided:

"The aforesaid amount [referring to the amount the court held was subject to appellee's lien for unpaid support] and any other sums payable under said promissory note due and owing to defendant, Stanley Elwood King shall be paid monthly to the Clerk of the Maricopa County Superior Court by Continental

---

3. The mere fact that Stanley was appellants' son-in-law does not in and of itself make the transaction one in bad faith. Drury v. State Capital Bank of Eastern Shore Trust Co., 163 Md. 84, 161 A. 176 (1932); Blum v. Sexton, 116 N.J.Eq. 16, 172 A. 333 (1934).

4. While the evidence was capable of inferences that appellants paid no more than the foregiveness of a $5,000.00 note to Stanley, since this matter was determined by summary judgment, we must assume appellants' statement that $18,100.00 was paid is true.

Security Guards, Inc., to be held by said Clerk until final adjudication of the matter between [appellee] and [appellants]."

We are of the opinion that the appellants were not required to appeal the default judgment to which they were not parties, in order to avoid the same becoming *res judicata* and binding against them. Zellerbach Paper Company v. Valley National Bank, 13 Ariz.App. 431, 477 P.2d 550 (1970).

Thus, we ,reach the merits of whether the trial court properly determined, on the motion for summary judgment, that Stanley's 50% of the note was not disposed of by the divorce decree and that appellee was a one-half owner of this 50%.

We note that appellee's affidavit in support of her motion for summary judgment alleges that she received a 50% interest in the note as her sole and separate property by way of assignment from Stanley. She goes on to allege that the balance of the note was not disposed of by the divorce decree and that "at the time I received the divorce decree was the first time I was aware that the court had not made a decision disposing or transferring the remaining 50% of the proceeds from the sale of the business." This is to be contrasted with her verified petition filed in the proceedings to hold Stanley in contempt, filed approximately 45 days after the decree of divorce, wherein she alleged that prior to the divorce the parties had divided the proceeds from the sale of the business and that Stanley's interest had an approximate value of $25,000.00. Also contrasted to appellee's affidavit was the affidavit of Stanley's counsel who represented him in the divorce proceedings that:

"At the second trial, no testimony was taken regarding the aforesaid note for the reason that the parties, prior to the trial, had entered into an agreement dividing the note by the use of the attached assignment so that Wanda King would own one-half and Stanley King would own the other half."

And:

"After the date of the assignment of 50% of the note to Wanda King, there was no dispute as to the fact that Wanda King was the owner of ½ of the note and Stanley King was the owner of the other half."

These affidavits have to be coupled with the fact that subsequent to the assignment by Stanley to appellee, Continental Security paid appellee only $500.00 per month (one-half the amount due under the note) and appellee apparently made no complaint.

Based on the record before the trial court we are of the opinion that a disputed issue of material fact existed as to whether the parties prior to the entry of the decree of divorce contractually divided the proceeds of the note equally, thus precluding the appellee from seeking to divide it again. Because of this factual dispute, summary judgment on this issue was improperly granted.

Lastly, appellants argue that their motion to dismiss the appellee's complaint filed in the original divorce proceeding should have been granted on the grounds the trial court lacked jurisdiction to determine the issues raised by that complaint in the domestic relations action. We note, however, that this complaint was in the nature of a "tender of issues" in garnishment proceedings under A.R.S. § 12–1590, contesting the answer of the garnishee defendant Continental Security Guard that a prior assignment of Stanley's funds to appellants was in effect. We therefore hold that the trial court had jurisdiction to make this determination of the garnishment contest within the confines of the divorce action.

For the reasons herein stated, the judgment in favor of the appellee is reversed and the matter remanded for further proceedings consistent with this opinion.

HAIRE, P. J., and EUBANK, J., concur.