In re SERRA BUILDERS,
INC., Debtor.

SERRA BUILDERS, INC., Plaintiff,

v.

JOHN HANSON SAVINGS BANK, FSB,
et al., Defendants.

Bankruptcy No. 90–5–3631–JS.
Adv. No. A90–0485–JS.

United States Bankruptcy Court,
D. Maryland.

May 14, 1991.

---

James P. Koch, Baltimore, Md., for debtor/plaintiff, Serra Builders, Inc.

Bowen P. Weisheit, Jr., Baltimore, Md., for defendant/John Hanson Sav. Bank.

Alan M. Grochal, Paul D. Trinkoff, Tydings & Rosenberg, Baltimore, Md., for defendants/J. Ronald Roth, et ux.

## MEMORANDUM OPINION DISMISSING COMPLAINT TO AVOID FRAUDULENT TRANSFER

JAMES F. SCHNEIDER, Bankruptcy Judge.

The instant complaint was brought by the Chapter 11 debtor in this case to set aside a foreclosure sale of real property as a fraudulent conveyance which occurred within 90 days before the bankruptcy petition was filed. The defendants are the bank which foreclosed on the mortgage secured by the debtor's real estate and the buyers who purchased the property at a public auction by tendering the highest bid. The parties have submitted the case for decision upon the following agreed statement of facts, which this Court adopts.

## FINDINGS OF FACT

1. Prior to foreclosure, Serra Builders, Inc. ("Serra") was the owner of real property in Baltimore County, Maryland, known as 14 Sparks Farm Road (the "Property").

2. In February 1990, Serra contracted to sell the Property to Northern Long at and for the price of $362,000. The Northern Long contract was never consummated.

3. On June 5, 1990, John Hanson Savings Bank (the "Bank") commenced a foreclosure action against Serra in the Circuit Court for Baltimore County (Case No. 90 CSP 2070), pursuant to Deed of Trust dated September 18, 1987, which was recorded among the land records of Baltimore County at liber 7687 page 814 (the "First Deed of Trust"). The First Deed of Trust debt as of October 19, 1989 was $332,510.20 ($104.88 *per diem*), according to the Affidavit of Mortgage Debt filed in the foreclosure action (Paper 2).

4. The Bank also holds a Second Deed of Trust against the Property securing a loan to Serra Builders in the original principal amount of $42,750.00 made on or about August 19, 1988 (the "Second Deed of Trust"). The Second Deed of Trust is recorded among the land records of Baltimore County at liber 7948, page 88 *et seq.*

5. As additional security for the $42,750.00 loan to Serra Builders made in August 1988, as described above, the Bank obtained a mortgage on real property in Baltimore County known as 16420 JM Pearce Road, which property is the principal residence of Lawrence J. Serra and Deborah F. Serra, his wife. The Bank docketed a foreclosure action against the JM Pearce Road property concurrently with the foreclosure against the Property.

6. After docketing the foreclosure against the Property, the Bank advertised the Property for sale, as stated in the Certificate of Publication filed in the foreclosure action.

7. On July 5, 1990, Serra contracted to sell the Property to Kenneth W. Crawford and Deborah V. Crawford, at and for the price of $375,000.

8. The Bank retained A.J. Billig & Co. to conduct the public auction sale of the Property, on July 6, 1990. The Roths [J. Ronald Roth and Carol P. Roth] were the highest bidders. They offered $280,000 for the Property.

9. On or about August 1, 1990, at Serra's behest, Earl T. Dolan, Jr. appraised the Property as having a fair market value of $465,000.

10. On August 22, 1990, Serra filed a voluntary petition under chapter 7 of the Bankruptcy Code.

11. On October 22, 1990, the Circuit Court ratified the foreclosure sale of the property.

12. Serra filed a Suggestion of Bankruptcy in the Circuit Court foreclosure case on November 5, 1990.

13. On December 3, 1990, Serra filed a Motion to Convert its chapter 7 case to a case under chapter 11 of the Bankruptcy Code. Serra filed concurrently a Complaint to Avoid Fraudulent Transfer, initiating the adversary proceeding presently before this court.

14. On December 11, 1990, Serra filed in the Circuit Court a motion to vacate the order ratifying the foreclosure sale. On January 4, 1991, the Circuit Court vacated its prior order of ratification.

15. On January 8, 1991, the Roths filed a motion to dismiss the fraudulent conveyance adversary proceeding presently before this Court, pursuant to Bankruptcy Rule 7012 and F.R.Civ.P. 12(b).

16. On January 10, 1991, Serra filed an Objection to ratification of the foreclosure sale, together with a Request for Hearing.

17. On January 15, 1991, the Bankruptcy Court entered a Consent Order Lifting stay.

18. On January 18, 1991, the Bank filed a Motion to Ratify the foreclosure sale in the Circuit Court. On February 11, 1991, the Circuit Court entered an order ratifying the foreclosure sale. Serra has filed a Motion for Reconsideration of this Order.

19. Serra Builders was insolvent at the time of the foreclosure sale.

Agreed Statement of Facts [P. 18] filed March 20, 1991.

In addition to the motion to dismiss filed by the Roths, this matter is before the Court on cross motions for summary judgment filed by the parties. For the reasons stated, the Court will grant the Roths' motions to dismiss and for summary judgment.

## CONCLUSIONS OF LAW

1. While a decision was pending in this case, the Court issued its opinion in the case of *In re Leroy Robert Brown, Jr.,* 126 B.R. 481 (Bankr.D.Md.1991). In *Brown,* a Chapter 7 debtor filed a complaint against his mortgagee to set aside a prepetition foreclosure sale of his residence as a fraudulent conveyance under Section 548 of the Bankruptcy Code. There were four grounds set forth in the complaint: (1) that the sale was constructively fraudulent because it took place within one year before the filing of the debtor's bankruptcy peti-

tion while the debtor was insolvent and the sale was for less than reasonably equivalent value; (2) that the ratification of the sale by the state court violated the automatic stay and was therefore null and void; (3) the filing of the bankruptcy petition tolled the period for filing exceptions to the sale in the state court and therefore the ratification was premature and the debtor's exceptions filed thereafter were timely; and (4) that the order of ratification, entered without notice to the debtor, deprived the debtor of property without due process of law. This Court granted the mortgagee's motion for summary judgment and dismissed the complaint.

The bankruptcy court accorded due deference to the foreclosure sale conducted as a public auction under the aegis of a Maryland court, subject to the state law requirements of proper notice, with which the mortgagee complied. The subsequent ratification of the sale by the state court over the debtor's objection was held to be binding on the bankruptcy court under the doctrine of *res judicata.*

Second, "mere inadequacy of the purchase price at a mortgage foreclosure sale is not enough to prevent the ratification of the sale, ... unless it is so grossly inadequate as to shock the conscience of the court," *Garland v. Hill,* 277 Md. 710, 712, 357 A.2d 374, 375 (1976).

Third, this Court noted that the bankruptcy courts in this district have held on a number of occasions that a prepetition foreclosure sale deprives a debtor's estate of any interest in the realty sold, citing *In re Edwards,* 62 B.R. 609 (Bankr.D.Md.1986) and *In re Shirley,* 30 B.R. 195 (Bankr.D. Md.1983). For this reason, there was no basis to continue the automatic stay in effect. The ratification and the later re-ratification of the sale by the state court which considered the debtor's objections and overruled them nullified the debtor's claims of a violation of due process.

Finally, this Court held that a "buy-in" of the debtor's property at foreclosure by the mortgagee was for reasonably equivalent value because the amount of the bid was augmented by the mortgagee's waiver of deficiency resulting from the sale (and alternatively by the eradication of the deficiency resulting from the debtor's Chapter 7 discharge, which had the same effect). Thus, even under the discredited 70% "brightline" of *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980), the sale of the debtor's residence at foreclosure was for "reasonably equivalent value." *Cf. In re Morris Communications, Inc.,* 914 F.2d 458 (4th Cir.1990), in which the Fourth Circuit eschewed the rigid 70% standard in favor of a case-by-case approach.

■ 2. Some of the factors relied upon to dismiss the complaint in *Brown* are present in the case *sub judice.* Here a foreclosure sale conducted "according to Hoyle" is the target of a complaint to avoid fraudulent transfer on the basis of inadequacy of price. As in *Brown,* a decision of the state court to ratify the sale over the debtor's objection is *res judicata.* Also present is the contention by the debtor that the sale was for less than "reasonably equivalent value," citing *Durrett, supra,* and Bankruptcy Code Section 548(a)(2)(A), (a)(2)(B)(i), which provides:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property or an obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

.  .  .  .  .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

11 U.S.C. § 548(a)(2)(A) and (a)(2)(B)(i) (1988).

3. The question of whether the sale price was for reasonably equivalent value

is a legal conclusion reached after due consideration of the facts.

4. The debtor's contention that the sale in this case was for less than reasonably equivalent value is completely without merit. The debtor's basis for its argument is an appraisal performed a month *after the sale* which set forth the appraiser's opinion that the fair market value of the subject property was $465,000. The date of the appraisal aside, the obvious flaw in the debtor's reasoning is the mistaken premise that fair market value is the same as reasonably equivalent value, especially in the context of a foreclosure sale at public auction.

5. Fair market value is defined in Black's Law Dictionary (4th ed. 1968) as the

Price at which a willing seller and a willing buyer will trade. *Montrose Cemetery Co. v. Commissioner of Internal Revenue*, C.C.A. 7, 105 F.2d 238, 242; *Utah Assets Corporation v. Dooley Bros. Ass'n*, 92 Utah 577, 70 P.2d 738, 741.

It has also been defined to mean: Amount that would in all probability have been arrived at between owner willing to sell and purchaser desiring to buy. *Karlson v. U.S.*, C.C.A.Minn., 82 F.2d 330, 337; *Whitlow v. Commissioner of Internal Revenue*, C.C.A. 8, 82 F.2d 569, 572; exchangeable value, *Walls v. Commissioner of Internal Revenue*, C.C.A. Wyo., 60 F.2d 347, 350; price at which a willing seller under no compulsion and a willing buyer under no compulsion will trade, *Rheinstrom v. Willcuts*, D.C. Minn., 26 F.Supp. 306, 310; *State ex. rel. Farmers & Merchants State Bank v. Schanke*, 247 Wis. 182, 19 N.W.2d 264, 267; *Talbot v. City of Norfolk*, 158 Va. 387, 163 S.E. 100, 101; price at which specified quantity of a given economic good is actually sold, or general or future power in exchange, *Jenkins v. Smith*, D.C.Conn., 21 F.Supp. 251, 253; price such as a capable and diligent business man could presently obtain from the property after conferring with those accustomed to buy such property, *Appeal of Hickey*, 124 Pa.Super. 213, 188 A. 95, 96; price which a willing purchaser would pay a willing seller, *Ozette Ry. Co. v. Grays Harbor County*, 16 Wash.2d 459, 133 P.2d 983, 988; *Baetjer v. United States*, C.C.A. Puerto Rico, 143 F.2d 391, 396; price which property would bring at a fair sale between parties dealing on equal terms, *Union Nat. Bank of Pittsburgh v. Crump*, 349 Pa. 339, 37 A.2d 733, 735; sum a purchaser willing but not obliged to buy would pay an owner willing but not obliged to sell, *Appeal of Hickey*, 124 Pa.Super. 213, 188 A. 95, 96; *City of Tampa v. Colgan*, 121 Fla. 218, 163 So. 577, 582; *City of Tulsa v. Creekmore*, 167 Okl. 298, 29 P.2d 101, 103; value in money as between one who wishes to purchase and one who wishes to sell, *Wood v. United States*, Ct.Cl., 29 F.Supp. 853, 859, 860 [89 Ct.Cl. 442]; *Stiles v. Commissioner of Internal Revenue*, C.C.A.Fla., 69 F.2d 951, 952.

"Fair market value" assumes agreement between owner willing but not obliged to sell for cash and buyer desirous but not compelled to purchase. *Lewis v. Beale*, 162 Md. 18, 158 A. 354, 356. It implies not only a willing buyer, but a willing seller. *Syracuse Engineering Co. v. Haight*, C.C.A.N.Y., 110 F.2d 468, 471. It means neither panic value, auction value, speculative value nor a value fixed by depressed or inflated prices. *In re Board of Water Supply of City of New York*, 277 N.Y. 452, 14 N.E.2d 789, 792. It resides in estimate and determination of what is fair, economic, just and equitable value under normal conditions. *State ex rel. Buck v. Rapp*, Sup., 36 N.Y.S.2d 790, 794.

*Id.*

6. As the Court of Appeals of Maryland stated in the case of *Lewis v. Beale*, 162 Md. 18, 158 A. 354 (1932):

There is no proof of any misconduct or wrongful act by either the purchaser, the trustees, or the mortgagee in connection with the sale, and it is firmly established by many decisions that mere inadequacy of price, unless so gross as to indicate fraud or misconduct, is not sufficient to

cause the court to vacate a mortgage foreclosure sale ... There is no evidence in this cause to justify the inference that the trustees did not reasonably endeavor and act to obtain the full value of the property. The sale was had on the premises, and was attended by a number of persons, who heard the sale called and fairly cried, with unhampered opportunity to bid ... The purchase price may not be the market value of the property, but a fair sale at public auction is one of the best evidences of actual value. It was the method specified in the deed of trust, and thereby entered into the contractual relation of the mortgagors and mortgagee. The agreed remedy was a condition upon which the loan was obtained, and was a part of the mortgage security, and the mortgagors necessarily contemplated that a sale involved the probability that the price received for the property would not be its full market value, because the purchase price at public auction would be obtained by a compulsory or forced sale, which would not fulfil the prerequisites for the determination of a fair market value, which assumes an agreement on the price of the land resulting from a treaty between an owner willing, and not obliged, to sell, for cash, and a buyer desirous, but not compelled, to purchase ...

The fact that the court must consider the question at bar with reference to the circumstance that the standard is that of a forced sale, fairly made, rather than that of a voluntary sale by the owner, is due to the default of the debtor, who must assume the agreed consequences of the default. If the sale take place during a period of financial depression, or of depreciation in the value of land, or of other adverse general conditions for which neither party is responsible, and hardship thereby result, it is a consequence which must be borne as an incident of the contract, and the court cannot relieve one party to the contract without violating the contractual right of the other ... Unless there be fraud or misconduct, a mere inadequacy of price

will not be sufficient to vacate the sale. [Citations omitted.]

162 Md. at 22–23, 158 A. at 356.

■ 7. The foregoing authoritative statement has particular application to the case at bar. The filing of bankruptcy conferred no special status upon the debtor to go beyond the sanctions of its contractual obligations under state law to invalidate a properly-conducted prepetition foreclosure sale of real estate subject to a mortgage which was in default.

8. In certain situations, the Bankruptcy Code *does* permit a debtor or trustee to modify rights conferred under state law, including the modification of contractual obligations. For example, Section 365 provides for the assumption or rejection of prepetition executory contracts. Section 522 permits the avoidance of judicial liens to the extent that they impair a debtor's exemptions, and even allows the avoidance of certain consensual security interests (nonpossessory, nonpurchase money security interests in household furnishings, etc.).

9. However, to hold that a debtor in bankruptcy in default on a mortgage may avoid a prepetition foreclosure sale based on the allegation that the sale was a fraudulent conveyance obviously stretches reason and logic.

■ First, assuming that the foreclosure sale could be avoided, the debtor's estate cannot recover the property transferred. A foreclosure sale differs from other types of transfers which can be avoided and recovered by the estate. Because the mortgage itself would not be subject to avoidance, the mortgagee would be free to attempt to resell the property at another auction. (*Quaere:* What would be the consequence if a second auction sale, conducted post-petition, produced the same high bid? Would the mortgagee be required to conduct the auction over and over again, holding out until the property might sell for an amount acceptable to the bankruptcy court? The labors of Sisyphus were no more futile than this! *) More likely, be-

---

* Sisyphus was "a king in classic mythology who

offended Zeus and was punished by being

cause a second sale would take place post-petition, it would not fit the definition of a fraudulent conveyance, (because it would not be within one year before the filing of bankruptcy), and therefore would not be subject to being avoided. In that case, assuming the second result was the same as the first, nothing would have been accomplished, except for additional delay and expense to the mortgagee and the prospective purchaser.

Second, the holding by the bankruptcy courts in this district that a prepetition mortgage foreclosure sale divests the debtor's bankruptcy estate of any interest in the property conveyed is at odds with the recognition of a Durrett-type cause of action. It does not make sense on the one hand to hold that the stay should be lifted to permit the ratification of a prepetition foreclosure sale and on the other to allow the debtor to avoid the foreclosure sale as a fraudulent conveyance.

10. In addition, there was nothing remotely fraudulent about the sale in this case. The buyers have no connection to the parties to the mortgage and are wholly innocent bona fide purchasers for value. The instant complaint has severely prejudiced them by delaying their taking possession of the property of which they are the rightful owners and by increasing the purchase price by the costs which they have been forced to incur in defending those rights. This Court's notions of justice and fair play are offended by this meritless complaint and the wrong-headed *Durrett* doctrine upon which it is based.

11. The only beneficiaries of a decision to grant this complaint and set aside the foreclosure sale would be the corporate debtor's insiders, namely Mr. and Mrs. Lawrence Serra, who are liable to the bank as guarantors on the loans it made to the debtor.

12. This Court categorically rejects the proposition espoused in *Durrett* that by filing bankruptcy, a debtor may set aside a prepetition foreclosure sale which was properly conducted under the aegis of a state court, especially where that sale was ratified by the state court over the debtor's objection that the forced sale price was inadequate.

13. The only allegation of the impropriety of the sale raised by the debtor related to the fact that the sale in question was advertised only in *The Jeffersonian*, a weekly newspaper published in Baltimore County, Maryland, where the property is located. This allegation is likewise without merit. As the debtor concedes, such advertisement fully complied with Maryland Rule W74(a)(2)(b), which provides:

2. By Publication.

Before making a sale of mortgaged property, the person authorized to make such sale shall give notice of the time, place and terms thereof by advertisement in some newspaper published in the county where the mortgaged property, or some portion thereof is located, if there be one so published, and, if not, in a newspaper having a substantial circulation in said county; provided, however, that in the City of Baltimore the notice shall be published in one or more of the daily newspapers published in said City. Such notice shall be given for the period of time specified below:

(i) For the sale of real estate or chattels real—at least once in each week for three successive weeks, the first such publication to be not less than fifteen days prior to sale and the last such publication to be not more than one week prior to sale.

(ii) For the sale of personal property—not less than five days nor more than twelve prior to sale.

Maryland Rule W74(a)(2)(b) (1990).

14. This debtor had the same right as one not in bankruptcy to contest the ratification of a prepetition foreclosure sale in the state court on the ground of inadequacy of price. A debtor in bankruptcy should not have a second opportunity to avoid a

---

forced to roll an enormous boulder to the top of a steep hill. Every time the boulder neared the top, it would roll back down, and Sisyphus would have to start over." Hirsch, et al., *The Dictionary of Cultural Literacy*, p. 42 (1988).

prepetition foreclosure sale on the ground that the sale was not for reasonably equivalent value.

15. The sale in the instant case for a price of $280,000 was for reasonably equivalent value because this Court is bound by the decision of the Circuit Court for Baltimore County which held that the price paid at foreclosure was adequate. For this reason alone, the instant complaint must be dismissed.

ORDER ACCORDINGLY.