# SMITH v. SINALOA LAND AND FRUIT CO.

## No. 2454.   Decided April 28, 1913 (132 Pac. 556).

1. CORPORATIONS—DIRECTORS' MEETINGS—NOTICE—ASSESSMENT OF
STOCK. Where four of the seven directors of a corporation were
notified and attended a meeting, at which they voted in favor of
a resolution directing an assessment on the corporate stock, and
the remaining directors thereafter ratified the proceeding, it
was not invalidated because of want of notice of the meeting to
such directors, who were not notified owing to absence.   (Page
449.)

2. CORPORATIONS—STOCK ASSESSMENT—PRIOR ASSESSMENT—PAY-
MENT. Where a note had been accepted in full settlement of an
assessment against a stockholder, and he had been given credit
by the company for the full amount of the assessment, the fact
that such amount was fifteen dollars short of full payment be-
cause of a failure of another to pay for the stockholder the full
amount requested to apply on the assessment did not show that
a subsequent assessment was invalid as violating Comp. Laws
1907, section 357, providing that no assessment shall be levied
while a portion of a previous assessment remains unpaid, un-
less specified conditions are complied with.   (Page 450.)

3. CORPORATIONS—STOCK ASSESSMENT—PRIOR ASSESSMENT—PAY-
MENT. Where a stockholder of a corporation loaned it $2,000,
which was actually received by the corporation in cash and for
which the corporation gave its note, a credit on the note of an
assessment levied on the stock was a payment of such assess-
ment so as to authorize a subsequent assessment under Comp.
Laws 1907, section 357, providing that no assessment shall be lev-
ied while a portion of a previous assessment remains unpaid, ex-
cept, etc., though the corporation was secondarily liable on a
note given to a third person, from whom the money loaned to
the corporation was obtained.   (Page 452.)

4. APPEAL AND ERROR—REVIEW—QUESTIONS NOT RAISED AT TRIAL.
An objection to an assessment on corporate stock, not within any
issue raised by the pleadings, will not be considered on appeal.
(Page 454.)

APPEAL from District Court, Third District; *Hon. C. W.
Morse,* Judge.

Action by H. J. Smith against the Sinaloa Land and
Fruit Company.

Judgment for defendant.   Plaintiff appeals.

AFFIRMED.

*Ray VanCott* and *M. W. Mansfield* for appellant.

*N. V. Jones* for respondent.

APPELLANT'S POINTS.

The charter of a private corporation, as the defendant is, incorporated under general laws, consists of the articles of agreement, and the laws of the state. (7 Am. & Eng. 646.)

When a corporation assesses the stock held by individuals in the corporation, it is bound to a strict compliance with its authority to act, otherwise it has no power to forfeit the stock on a sale, or otherwise collect the assessment. (26 Am. & Eng., 923, 924; Cook on Corporations (6 Ed.), sec. 129; Thompson on Corporations, secs. 2126, 2129; *Mitchell v. Vermont Copper Co.,* 40 N. Y. Sup. Ct. 407; *McNeely v. Woodruff,* 13 N. J. L. 352; *Germantown, etc. v. Filter,* 60 Pa. St. 130; *National Par. Oil Co. v. Chappellet,* 4 Cal. App. 505; *Ruch v. Caladonia S. M. Co.,* 92 Pac. 194; *Corcoran v. Sonora Min. Co.,* 8 Idaho, 660; *Clise Inv. Co. v. W. S. B.,* 18 Wash. 8; *Schwab v. The Frisco Min. Co.,* 21 Utah, 258; *Raht v. Mining Co.,* 18 Utah, 290; Laws of Utah, secs. 354, *et seq.*)

The articles of agreement and the law of the state is the contract the stockholders entered into with each other and the plaintiff has the right to stand upon the terms of that contract. (26 Am. & Eng. 923.)

The notice of the purported assessment as attempted to be levied by the board of directors as given by the *de facto* secretary is not legal as to form, and the same is not given by a legal officer. Being defective in either of these particulars it is not notice under the law and the corporation has no power to sell the plaintiff's stock by reason of it. (*Morris v. Land Co.,* 18 Wash. 327; *Ruch v. Caledonia S. M. Co.,* 92 Pac. 194; *Betheny v. Sperry,* 10 Conn. 200;

*Reilly v. Ogleby,* 25 W. Va. 36, 16 Am. & Eng. 929, 21 Am. & Eng. 839; Ibid, 852-3-4.) An assessment while a portion of a previous assessment remained unpaid, is void. (Sec. 357 Laws 1907; *Hatch v. Lucky Bill Min. Co.,* 25 Utah, 405; *Strause v. Sylvester,* 66 Pac. 662.)

Officers, to have power to levy and collect assessments, must be so in law, and not in fact only, and have all the qualifications required by law and the articles of agreement. (*State Bank v. Chetwood,* 8 N. J. L. 1; *Lockwood v. Mechanic's National Bank,* 9 R. I. 306; *Schwab v. Frisco Mining Co.,* 21 Utah, 258; *State v. Kuehn,* 34 Wis. 229; *Jones v. Mining and Milling Co.,* 32 Utah, 451.)

The directors must act as a board and the attempt to have the absent directors to ratify the action of those who were present and the attempt to have Jones, Jr., make the statement that he had notice of the meeting cannot be of avail nor help the defendant out the dilemma. (21 Am. & Eng. 865; *Alleghany County Work House v. Moore,* 95 Pa. St. 408; *Twelfth St. Market Co. v. Jackson,* 102 Pa. St. 269.)

STRAUP, J.

The defendant is a corporation. The plaintiff brought this action to restrain it from selling his stock for nonpayment of an assessment levied against it by the defendant. It is alleged in the complaint that on the 31st of October, 1911, a stockholders' meeting was called at which the stockholders "attempted to authorize a board of directors of said corporation to levy an assessment of four dollars per share on the outstanding capital stock of said corporation;" that on the 1st day of November the board of directors "attempted to levy an assessment of four dollars per share on the said stock, and said board ordered that the said assessment become due December 4th, delinquent December 6th, and that any stock on which said assessment should remain unpaid on the 23d of December should be sold to pay said assessment," which assessment was designated an assessment No. 4. Then it is alleged the assessment is void for the reasons: (1) "No legal notice of said assessment, nor of the

meeting of the stockholders aforesaid, nor of the order of said board for the sale of said stock, *was given to plaintiff;"* (2) that *"certain portions of previous assessments,* Nos. 2 and 3, upon the outstanding capital stock of said corporation remained and have remained unpaid; that the power of said corporation has not been exercised in accordance with the provisions of chapter 4, tit. 14, Compiled Laws of Utah 1907, for the collection of said assessments, or any of them; that said previous assessments, or either of them, have not been enjoined or restrained; and that neither of said assessments is more than ten per cent. of the outstanding stock of said corporation;" and (3) "that no notice of the meeting of the board of directors at which the said assessment was attempted to be levied *was given to certain of the directors* of said corporation, and that said directors not notified were not present at said meeting and did not participate in the said action of said board, nor have they or either of them since ratified the said pretended action of said board in levying said assessment." Other allegations are made, but they are not material on this appeal. The defendant's answer put in issue all the material allegations of the complaint. The case was tried to the court, who found the issues in favor of the defendant and entered a judgment accordingly. The plaintiff appeals. He assails the findings on the ground of insufficiency of the evidence in the particulars: (1) That notice was given to the stockholders, and that the stockholders' meeting was duly convened; (2) that notice of the board meeting was given to the board of directors; and (3) that no portion of previous assessments remained unpaid when the assessment in question was made. As to the first it would be enough to say that it was not alleged that notice was not given the stockholders or that the stockholders' meeting was not regularly or properly convened and held. But the record shows, and there does not seem to be any conflict in the evidence, that notice of the stockholders' meeting was given to the stockholders, and that the meeting was regularly held. As to the only allegation

made in that regard that legal notice was not given the plaintiff, no point is made in the brief.

However, the record also shows that notice was given him.

The defendant's property is in Mexico. Its principal place of business is in Salt Lake City, where its directors and officers reside. There are seven members of the board of directors. Notice of the board meeting was given to four of them, who, at the appointed time, held the board meeting and ordered the assessment as directed by the stockholders at their meeting held for that purpose. One of the directors was in Mexico, where the defendant's property is. He was corresponded with in relation to both the stockholders' and the board meeting. Of course he could not attend. His stock, however, was represented at the stockholders' meeting by proxy. Another of the absent directors was notified of the board meeting by telephone by the president and the secretary of the defendant and was told the specific object of the meeting and was requested to attend. He replied that he was unable to do so, requested that the four members proceed with the business, and stated that he approved and consented to the contemplated action. The other absent director was out of the state and was traveling somewhere in Idaho. The president and secretary of the company inquired of his wife in Salt Lake City where he might be reached and notified. She was unable to give them his address. Let it suffice by saying that the record discloses reasonable diligence was used to give him notice, but that it could not be given because of his absence from the state. These absent directors, on their return to Salt Lake, acquiesced in and ratified the action taken by the four members, and signed the defendant's record approving all that they had done in the premises. It is not claimed that the four members did not constitute a quorum or could not legally transact business on behalf of the board. All in that respect claimed is that all the members were not "legally notified" of the meeting, and for that reason the action of the board ordering the assessment which had theretofore been specifically directed by the

stockholders was void.    We think the contention without merit.

We have a statute (Comp. Laws 1907, sec. 357) which provides that "no assessment shall be levied while a portion of a previous one remains unpaid, unless: (1) The power of the corporation has been exercised in accordance with the provisions of this chapter for the purpose of collecting such. previous assessment; (2) the collection of such previous assessment has been enjoined or restrained; or (3) the assessment falls within provisions of the next preceding section," which provides that "no assessment shall exceed ten per cent. of the outstanding capital stock of the corporation, unless the corporation is unable to meet its obligations or satisfy the claims of its creditors, in which case the assessment may be for the full amount unpaid upon its capital stock, or for any less amount that may be sufficient to meet such obligations or claims." It will be noticed how loose are the allegations of the complaint as to this.

But no advantage seems to have been taken of it.    One of the attorneys (Mansfield) of record for the plaintiff testified on his behalf that on a previous assessment he was assessed $515 on stock held by him; that he paid $500 of it and still owed the defendant fifteen dollars when the assessment in question was levied.    As testified to by him, it came about in this way:    He was in Mexico at the time of such prior assessment and sent to the defendant in Salt Lake $200 in cash and instructed an acquaintance of his in Salt Lake, who had made some collections for him, to pay sixty-five dollars more to the defendant. That made a payment of $265, and still left him owing $250. He was unable to pay it.    The defendant was indebted to one Barboa in Mexico to an amount of several thousand dollars.    Mansfield thereupon made an arrangement with Barboa to accept his note for $250, the principal of the assessment, and $22.50 interest as testified to by him, or a total of $272.50, in consideration of which Barboa was to give the defendant credit on its account for that amount. Barboa agreed to do so, providing the defendant signed the

note as guarantor.   The note in Spanish was thereupon given
by Mansfield to Barboa for $272.50 (545 pesos), which was
indorsed and guaranteed by the defendant, who was given a
credit for that amount on its account with Barboa.   Mans-
field thereupon was given credit by the defendant in full
payment and settlement of his assessment, which was so
noted upon its books.   Mansfield at that time believed that
$250 was all that remained unpaid on his assessment.   Later,
however, he learned, so he testified, that his acquaintance in
Salt Lake paid the defendant but fifty dollars instead of
sixty-five dollars, and therefore he was short fifteen dollars,
and therefore there was "a portion of a previous assess-
ment" remaining unpaid when the assessment in question
was made, and therefore it is urged the latter is void.   That
the note was given for an amount less than the amount re-
maining unpaid on Mansfield's assessment is made evident
only by his testimony that $22.50 of the note was interest
on the unpaid assessment.   Just when he learned his ac-
quaintance in Salt Lake had paid the defendant but fifty
dollars instead of sixty-five dollars, as he had instructed and
as he had supposed had been done, is not made to appear.
He admitted, however, that he gave the note in full settle-
ment of his assessment in consideration of which his obliga-
tion in that particular was canceled.   And he made no claim
that he at any time had not paid the defendant in full until
he left the bar and took the witness stand in behalf of his
client.   Then to put a good face on a bad matter he further
testified that the note which he had given Barboa was not
paid by him, except he turned mules over to the defendant
to the value of $100, and that the defendant itself, as guar-
antor, paid it in full to Barboa, and that the witness still
owed the defendant on the note $150, with interest.   The
president of the defendant testified that, the note being in
Spanish, he was unable to read it, and when he signed it as
guarantor for the defendant he supposed, and as was rep-
resented to him, the note was for $265, the amount of the
assessment remaining unpaid.   No matter as to that, for
the note was given and accepted in full settlement of the

unpaid assessment of Mansfield, and the defendant given credit on its account with Barboa for the amount of it. $272.50. Furthermore, the exceptions in the statute, while negatived in the complaint, yet were not proven. The plain· tiff had that burden. (16 Cyc. 927.) He did not discharge it.

It further is contended that the president of the defendant also had not paid a prior assessment on his stock, amounting to $1638, when the assessment in question was levied. The evidence with respect to that is this: The president had loaned the defendant $2000. The loan was evidenced by a promissory note executed by the defendant and delivered to him. He paid such prior assessment by giving the defendant credit on the note for the sum of $1638. The note itself was put in evidence showing that such credit thereon was allowed and indorsed. The *bona fides* of the transaction was questioned by the plaintiff. The president was called as a witness and examined by the plaintiff at great length. The court allowed, as was proper, a very liberal and extended examination of him. He testified that he had deposited $2000 in a bank at Salt Lake City, naming it, to the credit of the defendant, and took its note therefor, some three months before the prior assessment was levied. In response to questions as to where he got the money, he testified that he obtained it from the Commercial Savings Benefit Company. On further inquiries as to particulars he testified that one McFarlane had $2000, but was unwilling to lend it to the defendant because the security which it had offered was not satisfactory to him. McFarlane thereupon loaned $2000 to the Commercial Savings Benefit Company. That company gave him its note and the desired real estate security—a note held by it for $3000 secured by a mortgage on real estate. The defendant, through its president, as "surety," also signed or indorsed the note given to McFarlane. The president of the defendant then personally borrowed $2000 from the Commercial Savings Benefit Company and gave it his personal and individual note, with personal security satisfactory to the company.

Then the president loaned to the defendant and deposited to its credit in the bank $2000 and took its note and security given by it to him. McFarlane, a witness on behalf of the plaintiff, testified substantially to the same thing. Does this show payment of the president's prior assessment? The plaintiff argues that it does not because the defendant became a surety or guarantor on the McFarlane note. The president of the defendant was also a director of the savings company.

The transaction was such as to require careful scrutiny. The trial court gave it that attention and permitted plaintiff a wide latitude in such particular. But the facts, as indisputably shown, are that McFarlane in fact loaned $2000 to the savings company, not to the defendant. That company became primarily liable to him. Its solvency is not questioned. The real estate security which it gave him also is not questioned. The president of the defendant borrowed $2000 from the savings company. He gave it his individual note secured by his own property. The security which he gave is not questioned. He then loaned $2000 to the defendant and deposited that amount in a bank to its credit. The defendant gave him its note with security. Now, whatever may be thought of this roundabout way of doing business, yet the undisputed fact is made to appear that the defendant in fact received $2000 from its president and gave him its note upon which it became primarily liable to him, and on that note the defendant was given a credit of $1638, the amount of the assessment levied against the stock held by the president. The only suspicious circumstance pointed to is the fact that the defendant became a surety or guarantor on the McFarlane note, from which it is argued that the defendant has already paid its president $1638 on the note given by it to him, and may also as surety be required to pay the McFarlane note. But that is not the point. The pertinent thing is, Did the defendant receive in cash $2000 from its president in consideration of which it gave him its note and upon which it became primarily liable to him? There does not seem to be any dispute about that. If that

be so, then would it seem immaterial where or how its president got the money. Such inquiries would only have a bearing in determining whether the defendant in fact received $2000 from him. So, too, would it seem immaterial that the defendant became secondarily liable on the McFarlane note. For again, if the defendant in fact received $2000 from its president in consideration of which it gave him its note and upon which it became primarily liable to him, then how would the fact that it was secondarily liable on the McFarlane note be any defense to its liability on its note to its president? Now the trial court had this whole matter before it, carefully inquired into and scrutinized the transactions, and found in favor of the defendant, and hence found that no prior assessment remained unpaid when the assessment in question was made. We think the evidence justifies the finding.

Lastly it is contended in argument and brief that the plaintiff nevertheless is entitled to prevail for the reason that under the statute full-paid capital stock of a corporation is not assessable for any purpose, except to such an extent and in such manner as may be expressly provided in the articles of incorporation; and, since the defendant's articles of incorporation were not put in evidence, there is nothing to show that the assessment was permissible. It is enough to say no such issue was tendered. The plaintiff in his complaint alleged the specific grounds upon which he claimed the assessment to be void and sought to restrain its payment. They are want of notice to the plaintiff of the stockholders' meeting, and to certain members of the board of directors of the board meeting, and on the ground that "certain portions of previous assessments" were unpaid. Neither by the pleadings nor evidence was it claimed or shown that the assessment was not authorized by the articles of incorporation. No such point was made in the court below. It is pressed on us here for the first time without issue or evidence, and urged upon us that since an assessment cannot be made unless authorized by the articles, and since they are not before us, therefore must we

assume they do not authorize any assessment, and therefore the assessment in question is void. In this the plaintiff does violence to the familiar rules that judicial inquiries must be confined to the issues, and that one may not present and try a cause on one theory in the court below and be heard on another in the court above.

Let the judgment be affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.