## UNITED STATES v. INTERSTATE R. CO.

(District Court, W. D. Virginia, Big Stone Gap. August 3, 1926.)

**1. Corporations ⊚⟶298(1).**

In matters involving exercise of legislative discretion, directors can bind the corporation only when acting together as a board.

**2. Corporations ⊚⟶298(1)—Illegal action of directors may be ratified and given validity only at subsequent legally held board meeting.**

Action taken by directors at an illegal board meeting can be ratified and given retroactive validity only at a subsequent legally held board meeting.

**3. Corporations ⊚⟶298(3).**

Subsequent waiver by absent directors of notice of a past special board meeting cannot validate action taken at that meeting.

**4. Estoppel ⊚⟶58.**

To create an estoppel in pais, the party asserting the estoppel must have been misled to his injury.

**5. Estoppel ⊚⟶63—Defendant corporation held not estopped to show that action taken at directors' meeting was illegal.**

Directors of defendant railroad company at a special meeting, of which some of the directors were not notified and were not present, passed a resolution accepting the provisions of Transportation Act 1920, § 209 (Comp. St. § 10071¼dd). Within 10 days thereafter at a legally called meeting, the resolution was rescinded and the Interstate Commerce Commission notified of such action. *Held*, that the United States had sustained no injury, which estopped defendant to show that its acceptance was illegal, and not binding.

At Law. Action by the United States against the Interstate Railroad Company. Trial to court, and judgment for defendant.

J. C. Shaffer, U. S. Atty., of Roanoke, Va., and C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va.

J. F. Bullitt, of Philadelphia, Pa., and John W. Chalkley and J. F. Bullitt, Jr., both of Big Stone Gap, Va., for defendant.

McDOWELL, District Judge. This is an action at law, in which trial by jury was waived. In March, 1920, four of the defendant's directors lived in Philadelphia, and the remaining two directors, Messrs. Miller and Ayers, lived in Big Stone Gap, Va. On March 11, 1920, being under a mistaken belief as to the nature of the offer made in section 209, Transportation Act 1920 (41 Stat. 464 [Comp. St. § 10071¼dd]), the four Philadelphia directors held a special board meeting and adopted a resolution accepting the offer made in said section. A notification of this resolution was sent to the Interstate Commerce Commission, and acknowledge-

ment of its receipt was made on March 13th. The meeting above mentioned was held at 10 o'clock in the forenoon of March 11th. No advance notice of that meeting was given to either of the two Virginia directors. On March 11th, before the meeting was held, one of the directors in Philadelphia wrote to one of the Virginia directors of the proposed action and the reason therefor, and inclosed a formal notice of a special board meeting to be held in Philadelphia at 10 a. m. of March 11th. Written under the notice was a blank acceptance and waiver, reading:

"We, the undersigned, hereby accept service of the above notice, and waive all other notice of the meeting above referred to."

The writer of the letter requested that the two Virginia directors sign the foregoing waiver and return it to him. This letter reached the Virginia directors on March 13th, and the waiver was on that day signed by the two directors and sent to Philadelphia.

Having in the meantime discovered the mistake that had been made as to the nature of the offer made in section 209, another special meeting of the board of directors was held at Bristol, Va., on March 20th, and the resolution of March 11th was rescinded. Notification of this action was promptly given to the Interstate Commerce Commission. The meeting of March 20th was duly called and held. Notice thereof had actually or presumably been given to every director a reasonable time in advance of the meeting. The Interstate Commerce Commission declined to accept the rescission, and on December 4, 1924 (Guaranty Settlement with Interstate R. Co., 94 Interst. Com. Com'n R. 164), ruled that the defendant was indebted to the United States (under section 209, Transportation Act 1920) in the sum of $194,882.31, and this action was brought to recover that sum.

There was no sufficient evidence of a custom such as would have authorized the special meeting of March 11th, and the defendant proved clearly that no emergency existed which could have excused advance notice of that meeting. On the other hand, it was made quite clear that the failure to give notice of a special meeting of the board to consider acceptance of the proposal made in section 209 was due solely to a belief that the Virginia directors would concur in the proposed action of the Philadelphia directors, would (after the meeting had been held) waive notice, and that such waiver would be

as effective as notice given reasonably in advance.

[1, 2] Laying aside instances in which the corporation is estopped, and barring cases of emergency and possibly some cases governed by custom, a waiver such as was executed by Messrs. Miller and Ayers cannot by any possibility have any legal effect, unless it has the effect of a ratification of the action of a part of the board taken at the then past and illegal meeting. An act done at an illegal board meeting may be ratified and given a retroactive validity at a subsequent legally held board meeting. But the nature of the office of director of a private corporation is such that directors cannot effectively act as directors, except at duly held board meetings. In Honaker v. New River, H. & W. R. Co., 116 Va. 662, 672, 673, 82 S. E. 727, 730, it is said:

"It is said in 10 Cyc. 774-776, in the article on "Corporations," edited by Judge Thompson, in discussing the mode in which directors may act, and the statement seems to be sustained by the cases: 'We may settle down with confidence upon this principle, that in all matters involving the exercise of what might be termed a legislative or judicial discretion, and which the directors, therefore, cannot delegate to others, as elsewhere shown, they can bind the corporation only by acting together as a board. A majority of them cannot undertake to act in their individual names for the board itself, and no act can be done affecting the ownership of property except by a resolution of the board when regularly constituted and sitting in consultation.' 3 Thomp. on Corp. 3905, 3906, 3944; Morawetz on Corp. (1st Ed.) § 246; 1 Elliott on Railroads, §§ 255, 257, 920." See, also, 2 Thompson, Corporations (2d Ed.) § 1143.

[3] As Miller and Ayers, at Big Stone Gap, on March 13th, had no power to ratify the act done at the illegal meeting on the 11th, they consequently had no power to waive or excuse the failure to give them advance notice of that meeting. To hold otherwise is to hold that directors, acting individually and out of board meeting, have a power which they can exercise only as members of a majority of a quorum at a legally held board meeting. And this seems to me a conclusive reason for holding that the waiver, executed by Messrs. Ayers and Miller, is an absolute nullity. Reported cases in which directors, acting out of board meetings, have attempted to waive want of notice of a past board meeting, are seemingly very few in number.

In Holcombe v. Trenton White City Co., 80 N. J. Eq. 122, 134, 82 A. 618, 624, two of the seven directors (pages 622, 623) were not given notice of a special meeting, but afterwards signed a waiver of the failure to give notice. In the opinion it is said:

"The reason and principle underlying these decisions is this: Each member of a corporate body has the right of consultation with the others, and has the right to be heard upon all questions considered, and it is presumed that, if the absent members had been present, they might have dissented, and their arguments might have convinced the majority of the unwisdom of their proposed action, and thus have produced a different result. If, however, they had notice and failed to attend, they waived their rights, likewise if they signed a waiver of notice prior to the meeting; but consent given subsequent to the meeting, looking to ratification of what was done, is without force to validate the action taken."

This case was affirmed. See 82 N. J. Eq. 364, 91 A. 1069.

In Lippman v. Kehoe Stenograph Co., 11 Del. Ch. 80, 87, 95 A. 895, 898, one Waples was not present at a special board meeting (page 898), had not been given notice of the meeting, and after the meeting had been held he signed a waiver of notice. On the same page the court said:

"It is, of course, fundamental that a special meeting, held without due notice to all the directors, is not lawful, and all acts done at such meeting are void. 10 Cyc. 784, 785. As to regular or stated meetings the rule is different. Presence at the meeting waives the notice, and so may a waiver be properly executed before the meeting, for there is still an opportunity to attend it. But a waiver subsequent to the meeting is ineffective."

In Stafford Springs St. R. Co. v. Middle River Mfg. Co., 80 Conn. 37, 41, 66 A. 775, 777, there were waivers executed after a special board meeting by directors who had not been notified in advance for want of time. The opinion reads in part:

"Notice to a majority, in such a case, if they, being all that can be reached, proceed to hold the meeting, will, in the absence of any by-law to the contrary, support their action, at least if, as in the present instance, the others subsequently sign and file a waiver of notice, and the corporation acquiesces in what was done by making it the basis of a claim of legal right. Chase v. Tuttle, 55 Conn. 455, 12 A. 874, 3 Am. St. Rep. 64."

It is, of course, impossible to know what the court would have held, had the cor-

poration not subsequently ratified the action taken at the special board meeting.

In Smith v. Sinaloa Land & Fruit Co., 42 Utah, 445, 449, 132 P, 556, 557, the stockholders at a regularly held meeting on October 31, 1911, directed the board of directors to make an assessment on the stockholders of $4 per share. Four of the seven directors of the company attended a special board meeting held on November 1st, and made the assessment as directed. Two of the absent members of the board had advance notice of the board meeting, and the remaining member of the board was out of the state and could not be found, although the court held that reasonable diligence was employed in an effort to locate him. The opinion reads in part:

"These absent directors, on their return to Salt Lake, acquiesced in and ratified the action taken by the four members, and signed the defendant's record approving all that they had done in the premises. It is not claimed that the four members did not constitute a quorum, or could not legally transact business on behalf of the board. All in that respect claimed is that all the members were not 'legally notified' of the meeting, and for that reason the action of the board ordering the assessment, which had theretofore been specifically directed by the stockholders, was void. We think the contention without merit."

Whether the action of the absent directors was taken at a subsequent regularly held board meeting, or otherwise, does not appear; but the conclusion of the court was clearly right, without regard to the action of the absent directors. The majority of the board merely performed a ministerial duty, obeying a direction given by the stockholders in a matter as to which the directors had no discretion, and it is difficult to believe that the court would not have upheld the action of the majority of the board, if the absent directors had on their return made no effort of any sort to ratify the act of the majority.

The foregoing are the only reported cases that I have found in which there was, or may have been, a waiver of notice executed by a director in pais after a special meeting has been held. Doubtless there are other cases, but I have not found them. I see no way to avoid the conclusion that the resolution of March 11th was unauthorized. It was not only never validly ratified, but was, as has been said, at a legal board meeting on March 20th, expressly rescinded. Unless the defendant is estopped to rely upon the invalidity of the resolution of acceptance, the government cannot prevail.

[4] I can see no force at all in the government's contention that the defendant is estopped to assert the invalidity of the act done in its name on March 11th. The burden of proof rests on the government. 21 Corpus Juris, p. 1250, § 267. In the same volume (page 1133, § 134) it is said: "It is essential to an equitable estoppel that the person asserting the estoppel shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped." And again (pages 1135–1137) it is said: "In order to create an estoppel in pais, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with, and no injury suffered, there can be no estoppel in pais."

[5] The appropriation of funds necessary to make good the guaranty of the government was made in the Transportation Act. See section 209, subsec. (g), 41 Stat. 466. And in the same section it is provided that the Interstate Commerce Commission will, after the expiration of the guaranty period, ascertain and certify to the Secretary of the Treasury the amounts necessary. In other words, the appropriation was made on February 28, 1920, and no calculation of the sums necessary to make good any guaranty could be made until after September 1, 1920. How the Interstate Commerce Commission could, between March 13 (Plaintiff's Exhibit 3), and March 24, 1920 (Defendant's Exhibit C), have changed the government's position in reliance upon the resolution of March 11th is difficult to conceive. But, if there was any change, there is no proof of it.

It is, of course, true that, as the resolution of March 11th was unauthorized, and was never given validity by subsequent ratification, it never created any valid obligation on the government. At the utmost there was, between March 13th and March 23d, an appearance only of a possible obligation on the part of the government; and if in fact a deficit of income of the defendant during the guaranty period had occurred, the presumption of official right doing affords strong reason for saying that the government was never for a moment in danger of being held liable. Presumably the Interstate Commerce Commission would not certify that any carrier had a right to money under section

209, without having ascertained that such carrier's acceptance of the benefits and obligations of the statute was valid and binding. To do otherwise would be negligent, and negligence cannot be presumed.

Being myself satisfied that the defendant is entitled to a judgment in its favor, I do not think it necessary that I consider the defendant's further defense of mistake. I shall accordingly file a general finding of facts in favor of the defendant, and render judgment accordingly.