Luther S. GARTRELL, III, and Willie Oscar Woods, Sr., Plaintiffs,

v.

James R. KNIGHT, as Chairman of the State Democratic Executive Committee of Alabama; Don Siegelman, as Secretary of State of Alabama; and the Honorable Wallace W. Wyatt, as Probate Judge of St. Clair County, Alabama, Defendants.

Civ. A. No. 82–G–1694–S.

United States District Court, N. D. Alabama, S. D.

Sept. 1, 1982.

**450**

R. David Christy, Johnson & Johnson, Birmingham, Ala., for plaintiffs.

Edward Still, Birmingham, Ala., for defendant Knight.

Redding C. Pitt, Montgomery, Ala., for defendant Don Siegelman.

Billy Church, Pell City, Ala., for defendant Wallace W. Wyatt.

## MEMORANDUM OF OPINION ON MOTION FOR PRELIMINARY INJUNCTION

GUIN, District Judge.

The plaintiffs came before this court on a motion for a temporary restraining order to prevent the exclusion of Luther Gartrell from the September 7, 1982, Democratic Party primary election. The court granted the restraining order, and, with the consent of all parties to the dispute, extended the original order for ten days. The court presently considers the motion for a preliminary injunction on affidavits presented by the parties.

Luther Gartrell is an attorney practicing law in Ashville, Alabama. In 1980, Gartrell sought the office of District Attorney for St. Clair and Blount Counties as a Republican. Two years later, in 1982, he qualified with the State Democratic Party as a candidate for that party's nomination for the office of District Judge of St. Clair County. On July 16, 1982, the State Democratic Party certified to the Secretary of State the

name of Luther Gartrell as a candidate for District Judge.

During the intervening period between Gartrell's two candidacies, the Alabama Democratic Party adopted a loyalty rule for candidates that is commonly referred to as the Radney Rule, after its author. The Radney Rule states that

(f) No person shall be permitted to qualify as a candidate for nomination or election to public or party office in said primary elections who did not support the nominees of the Democratic Party in the last general election.

Any elected public official who attained office as a nominee of the Democratic Party, and any person who is a member of the State Democratic Executive Committee, shall not be permitted to qualify as a candidate for public or party office in said primary elections if, while holding such public or party office, he or she did not support the nominees of the Democratic Party in the last general election.

Rules of the Democratic Party, Rule Change Adopted February 14, 1981.

On July 22, 1982, a challenge to the Gartrell candidacy was filed, alleging that Gartrell was not qualified to run due to violations of the Radney Rule. Shortly thereafter, Gartrell was notified by letter that a committee authorized under Article IX of the state party rules to hear such challenges would meet on July 28, 1982.[1] On that date, a committee of three took testimony and voted unanimously to sustain the challenge to the Gartrell candidacy. The decision was without leave to appeal to any body within the State Democratic Party. On July 29, 1982, the office of the Secretary of State received a telegram notifying it that Luther Gartrell had been disqualified.

The plaintiffs allege that the Radney Rule violates a host of their rights protected under both the United States Constitution and the Constitution of the State of Alabama. For the purposes of the motion for preliminary injunction the court finds it necessary to reach only the due process claim.[2] There are two aspects of the due process claim: (1) the validity of the procedures by which the candidate was disqualified; and (2) the fairness of the retroactive application of the Radney Rule.

Under Article VII, Section 7 of the Rules of the Democratic Party as adopted by the State Democratic Executive Committee of Alabama, the chairman of the Executive Committee is directed to appoint a subcommittee of five persons to hear all contests or challenges to candidacies. Gartrell was advised by letter that the challenge to his candidacy would be heard under this provision. Yet the committee which was convened to hear the challenge consisted of only three persons. There is no provision for a hearing by less than five under that section. Thus, plaintiff alleges, the action of the party was void under its own rules, and, since the Democratic Party is a state actor, it is void as a violation of the due process clause of the fourteenth amendment.

The due process clause has been held to protect individuals from the arbitrary application of statutes. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See also, e.g., Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The Supreme Court has noted that when an agency prescribes rules and regulations for the orderly accomplishment of its statutory duties, its officials must vigorously comply with these requirements. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (State Department regulations held to be binding on the Secretary of State, and action which violated them was invalid). *Vitarelli v. Seaton*, 359 U.S.

---

1. All parties have stipulated in open court that Article IX of the Rules of the Democratic Party as Adopted by the Executive Committee of Alabama on January 31, 1970, mistakenly refers to a subcommittee provided by Article VII, Section 8. It is meant to refer to Article VII,

Section 7, which provides for a committee of five to hear candidate challenges.

2. The court's consideration of plaintiffs' other claims is postponed until the final hearing on the merits.

535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (Department of Interior regulations held to be binding on the Secretary of the Interior, and action in violation of them was invalid). *See also Rodway v. United States Department of Agriculture*, 514 F.2d 809, 814 (D.C. Cir.1975) (It is of course well settled that validly issued administrative regulations have the force and effect of law.)

■ The "white primary" line of cases established that private conduct that is an integral part of the electoral process is deemed "state action." *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1948). Furthermore, it has been held that "[T]he State Democratic Executive Committee [of Alabama] is an official arm of the state and its action constitutes state action." *Davis v. Schnell*, 81 F.Supp. 872, 878 (S.D.Ala.), aff'd 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093 (1949). Thus, as a state actor, the activities of the Alabama Democratic Party come under constitutional scrutiny. The party, like other state agents, is constitutionally bound to follow its own rules. In this case, the party was bound to provide the plaintiff with a hearing before a committee of five persons. There is no provision in the election laws or party rules allowing the authority of the candidate challenge committee to be exercised by a panel of less than five members. The three members of the committee who heard the Gartrell challenge cannot be considered a quorum of the full panel, since the unappointed members cannot be counted as absent for the purposes of determining a quorum. Consequently, plaintiff argues, the action of the challenge committee is void because the committee was incomplete, in violation of the rule. "But for actions taken contrary to regulations to be invalidated for that reason, prejudice must be shown." *F.T.C. v. Foucha*, 356 F.Supp. 21, 25 (N.D. Ala.1973). Plaintiff Gartrell was prejudiced by the failure to empanel a full committee due to a lack of collegiality.

■ The defendants argue that the unanimous decision of the "rump" subcommittee, rather than being prejudicial, is authoritative because it represents a majority vote of the complete committee. The court cannot agree. The corporate law principle of collegiality which governs special meetings of boards of directors has analogous application here. The collegiality principle states that boards are to act as a body, rather than as individuals, or as an incompletely assembled board. *Schuckman v. Rubenstein*, 164 F.2d 952, 957 (6th Cir. 1947). The rationale for this principle was stated in *United States v. Interstate R. Co.*, 14 F.2d 328, 329 (W.D.Va.1926):

> In *Holcombe v. Trenton White City Co.* [80 N.J.Eq. 122, 82 A. 618] (citation omitted) two of the seven directors ... were not given notice of a special meeting, but afterwards signed a waiver of the failure to give notice. In the opinion it said:
>
> > The reason and principle underlying these decisions is this: Each member of a corporate body has the right of consultation with the others, and has the right to be heard upon all questions considered, and it is presumed that, if the absent members had been present, they might have dissented, and their arguments might have convinced the majority of the unwisdom of their proposed action, and thus have produced a different result. If, however, they had notice and failed to attend, they waived their rights, likewise if they signed a waiver of notice prior to the meeting; but consent given subsequent to the meeting, looking to ratification of what was done, is without force to validate the action taken."

14 F.2d at 329.

■ Thus, the absence of two members from the committee that heard Gartrell's challenge was not merely the absence of two votes that could not have overpowered the three votes cast to disqualify him. Rather, the unnamed committee members represent the potential for differing perspectives that, perhaps, begin as a minority view but, after debate and deliberation, eventually become the view of the whole. The denial of the possibility of these views is, therefore, prejudicial to the plaintiff.

In its affidavit, the Democratic Party seeks to explain the empaneling of less than a complete committee by noting the difficulty of getting individuals, already burdened by other commitments, to serve as a committee member, on short notice, during the summer months. The appropriate time and place for consideration of such a fact is at the Democratic Executive Committee's rulemaking session. Once the Executive Committee has chosen to discount this fact, and established high procedural standards for its challenge committee, the court is powerless to redraft the rule to lower the standards, and is constitutionally bound to see that individuals receive their due under it.

In at least one other case where the Radney Rule was invoked to challenge a candidate, a seven member committee of the State Democratic Party was convened to hear the challenge. John "Bubba" Trotman, a candidate for statewide office, was afforded a hearing before this committee of extraordinary size, which, after deliberations, held that the challenge to Trotman was without merit. The rules of the Democratic Party must be applied in an even-handed manner. It is manifestly unfair to afford one challenged candidate a full committee and restrict another candidate to an incomplete one. The fact that the incomplete committee voted unanimously to disqualify Gartrell does not make the failure of the Democratic Party to comply with its own rules harmless error. The harm lies in the exclusion, not of a mere number of votes which if cast the other way would make no difference, but of debate and perspective that might affect judgment of the committee as a whole.

Directing a committee of only three members to hear the challenge to plaintiff's candidacy was in violation of the party rules and prejudicial to the plaintiff. Therefore, the action taken by the committee disqualifying plaintiff is void. *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970).

 The court concludes further that the Radney Rule itself violates the due process clause of the fourteenth amendment. In *Duncan v. Poythress*, 657 F.2d 691, rehearing en banc denied 664 F.2d 291 (1981), the Fifth Circuit said:

> Although we recently decided that the fourteenth amendment provides no guarantee against innocent irregularities in the administration of state elections, we were not required to determine when state election practices "may operate so unfairly as to constitute a denial of ... due process ...." *Gamza v. Aguirre*, 619 F.2d 449, 454 n.6 (5th Cir. 1980) (citing *Griffin v. Burns*, 570 F.2d 1065, 1078–79 (1st Cir. 1978) and *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970)). The approach which we adopted in *Gamza*, however, and the guidance offered by cases such as *Griffin* and *Briscoe*, point the way to our holding today that the due process clause of the fourteenth amendment prohibits action by state officials which seriously undermine [sic] the fundamental fairness of the electoral process.

657 F.2d at 699–700. Among the innocent irregularities that the fourteenth amendment did not reach were: allowing unqualified persons to vote, *Powell v. Power*, 436 F.2d 84 (2nd Cir. 1970); malfunctioning of voting machines, *Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975); illegally cast ballots mistakenly counted by local election officials, *Pettengill v. Putnam County R–1 School District*, 472 F.2d 121 (8th Cir. 1973).

The facts involved in this case are not innocent irregularities; rather, they are actions by agents of the state which render the election process unfair. The Democratic Party failed to provide the plaintiff with adequate notice of how he might qualify for its primary. (*See* discussion below.) It later failed to comply with its own rules when hearing the challenge to plaintiff's candidacy. The procedural aspects of the present case bear some resemblance to *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970). In *Briscoe*, prospective candidates for alderman were not notified that new, more stringent standards had to be met in order to be placed on the ballot. Furthermore, state officials denied the candidates an adequate opportunity to contest the application of the

new standards. The *Duncan* court, discussing *Briscoe*, said:

> In this due process case, the court reasoned (a) that the "liberty" protected from state impairment by the due process clause of the fourteenth amendment includes the freedoms of speech and association guaranteed by the first amendment; (b) that these first amendment freedoms extend to political activities such as running for elective office; and (c) that state election practices must therefore serve legitimate state interests "narrowly and fairly to avoid obstructing and diluting these fundamental liberties." 435 F.2d at 1054.

657 F.2d at 702.

Under the Radney Rule, Gartrell is being disqualified as a Democratic party candidate because in 1980 he ran as a Republican candidate and, therefore, did not give his total support to all the Democratic Party candidates. Yet, the Democratic Party loyalty oath in force at the time Gartrell ran as a Republican permitted one who had supported another party to run in the subsequent election as a Democrat if "at least one year before the deadline for qualifying to run for nomination in said Primary Election [he] file[s] a written statement of his intention to so qualify with the Chairman of the State Executive Committee ...." Rules of the Democratic Party, Rules Changes and Additions Adopted April 21, 1979. This rule, superseded by the Radney Rule of February 14, 1981, required notification to the party at least one year before the deadline for qualifying, but was repealed approximately one year and five months before that deadline. If the 1979 rule had not been repealed, Gartrell could have complied with it and sought office in the 1982 election as a Democrat. Under the Radney Rule, the test for loyalty is not prospective but retrospective and prejudicial.

■ Undoubtedly, the states have a compelling interest in preserving the integrity of the election process. *American Party of Texas v. White*, 415 U.S. 767, 782, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 760–61, 93 S.Ct. 1245, 1251–52, 36 L.Ed.2d 1 (1973). In order to serve this state interest, parties may require loyalty of voters or candidates. *See Rosario v. Rockefeller, supra; Ray v. Blair*, 343 U.S. 214, 72 S.Ct. 654, 96 L.Ed. 894 (1952); *Nader v. Schaffer*, 417 F.Supp. 837, 845 (D.Conn.), aff'd, 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976). What this court holds today is that the loyalty oath in question, the Radney Rule, did not provide adequate notice to plaintiff Gartrell of how he could comply with the rule. It usurped plaintiff's pre-existing associational right to affiliate with the Democratic Party, and therefore violates due process. *Duncan v. Poythress, supra; Briscoe v. Kusper, supra.*

## CONCLUSION

The Democratic Party, in the process of hearing of a challenge to plaintiff Gartrell's candidacy, violated its own procedural rule to the prejudice of the plaintiff, thereby rendering the attempted disqualification null and void.

The Democratic Party loyalty oath, by failing to give plaintiff adequate notice of the means of compliance, violates the due process clause of the fourteenth amendment to the United States Constitution.

## PLAINTIFFS' ENTITLEMENT TO A PRELIMINARY INJUNCTION

The circumstances in which a preliminary injunction may be granted are not prescribed by the Federal Rules of Civil Procedure. Consequently, the grant or denial of a preliminary injunction rests in the sound discretion of the trial court. 11 Wright and Miller, Federal Practice and Procedure, Section 2948 (1973). Professors Wright and Miller note four important factors to consider in deciding whether or not to grant a preliminary injunction:

(1) The significance of the threat of irreparable harm to the plaintiff if the injunction is not granted;

(2) The state of the balance between this harm and the injury that granting the injunction would inflict on the defendant;

(3) The probability that plaintiff will succeed on the merits; and

(4) The public interest.

The court finds that there is a threat of irreparable harm to the plaintiff if the defendants are not enjoined from excluding him from the upcoming primary election. If the election is allowed to go forward without Gartrell, and when the case is decided on the merits it is determined that he was wrongfully excluded, then there would be no remedy for the wrong. Setting aside the election would be the only meaningful remedy, but such a remedy can only be granted in "the most extraordinary of circumstances." *Smith v. Paris*, 257 F.Supp. 901, modified 386 F.2d 979 (5th Cir. 1967). Thus, since there is a preliminary finding that excluding the plaintiff from the upcoming ballot violates due process, and since failure to enjoin such exclusion will leave plaintiff without a remedy if his is not the extraordinary case, the court finds that irreparable harm will be done the plaintiff if he is excluded from the September 7, 1982, Democratic primary election.

Restraining the exclusion of Gartrell from the upcoming election would cause the Democratic Party relatively little harm. If the plaintiff is selected as the Party's nominee and it is ultimately decided that he is not a qualified candidate, then the Party's rules providing for such contingency would come into operation. *See* Article IX, Rules of the Democratic Party as Adopted by the State Democratic Executive Committee of Alabama on January 31, 1970. Thus, the Democratic Party, under its rules, has prepared for the contingency of the death or disqualification of a nominee. It must be concluded, then, that on balance, the harm to the plaintiff from denying the injunction would be great, while granting the injunction will cause relatively little harm to the defendant Party.

The party seeking a preliminary injunction need not show with absolute certainty that he will prevail on the merits. *Unicon Management Corp. v. Koppers Company*, 366 F.2d 199, 204 (2nd Cir. 1966). Moreover, the relative degree of likelihood of success is not alone determinative. "Rather it must be considered and balanced with the comparative injuries of the parties." Wright and Miller, Section 2948 at 453. In this case, the plaintiffs have effectively demonstrated both (1) that the balance of hardships tips decidedly toward plaintiff Gartrell, and (2) that serious and substantial questions exist as to whether the defendants have violated certain protected rights. The court concludes that plaintiffs have established a prima facie case justifying a more deliberate investigation into the merits of his claim.

The public interest, the final, but not least important, consideration in granting a preliminary injunction, is best served by permitting the candidate access to the ballot and allowing the people the opportunity to choose the Party's nominee. The court concludes that there are no considerations of public interest that mitigate against the grant of an injunction. A preliminary injunction in form appropriate to these findings and conclusions will issue forthwith.