**MIAMI GOLD PRODUCTIONS, INC., Plaintiff,**

v.

**GANNETT COMPANY, INC., Defendant.**

**No. 84 Civ. 4877 (PNL).**

United States District Court, S.D. New York.

July 24, 1984.

Robert W. Cinque, P.C., New York City, for plaintiff.

Nixon, Hargrave, Devans & Doyle, Edward R. Hughes, New York City, for defendant.

OPINION AND ORDER

LEVAL, District Judge.

This is an application for a preliminary injunction. At a conference on July 18, 1984, counsel acknowledged that they would stand on the written submissions as constituting the complete record of the hearing under Rule 65, F.R.Civ.Proc.

Plaintiff, Miami Gold Productions, Inc., is the producer of a new movie, entitled "Cry of the City". Defendant Gannett Company, Inc., publishes USA Today, a nationally distributed daily newspaper. The complaint alleges breach of contract and false

advertising under the Lanham Act, 15 U.S.C. § 1125(a).

The facts are in many respects undisputed.

USA Today is promoting through large notices in its pages a "USA Today—Michael Jackson Victory Concert Tour Ticket Contest". Entrants in the contest need only fill out and send in a coupon (or facsimile) from USA Today. The winners of the drawings are promised free concert tickets to performances of the Jacksons, plus free travel to and accommodations at the place of the concert. The free travel is provided by an airline as a co-sponsor; the accommodations are provided by a co-sponsor hotel chain.

On June 8, 1984, plaintiff USA Today wrote a letter to Michael Franzese, president of Miami Gold, constituting "a formal agreement" providing that Miami Gold would become a co-sponsor of the promotion. Miami Gold was to provide 1,000 sequined right hand gloves (a Michael Jackson hallmark) and 1,000 white satin baseball jackets bearing the USA Today logo on the back. The jackets were to be awarded as drawing prizes in the contest. They were permitted to have "Miami Gold"/"Cry of the City" written in red glitter on the front.

Under the letter, Miami Gold was to "receive equal to equal billing and consideration" with the other equal sponsors.

The letter closed with the following paragraph

I look forward to a highly successful promotion that will reflect favorably on your outstanding organization, and be consistent with the ethics and ideals of USA TODAY. I understand "Cry of the City" under your leadership has dramatically restored hope to many underprivileged children in Florida.

After the ads had begun to run, defendant learned that a special segment televised on NBC Nightly News under the title "The Mobsters and the Movies" reported that Franzese and Gary Zimmerman (the executive producer of "Cry of the City") were backed on their movie venture by Franzese's father "John 'Sonny' Franzese, one of the top Mafia bosses in the country," that "Michael Franzese is now a high-ranking member of an organized crime family, the Columbo Mafia family," that the "elder Franzese and his mob associates were the men behind the distribution of a number of sex and violence films, including 'Deep Throat' and 'Texas Chain Saw Massacre' which made millions for the mob", and that "Franzese's and Zimmerman's efforts to make a feature length musical and not a sex film or a violence film is a big move for mobsters to get into the more respectable aspects of the movie business." The report also stated that "Zimmerman was convicted of perjury in an organized crime case in 1978 and is scheduled to be in court in Los Angeles tomorrow on grand theft charges", and that Michael Franzese was "arrested by the FBI on racketeering charges, one of fourteen people charged in an alleged Mafia loan sharking and strong-arm operation that invested mob money in legitimate businesses."

USA Today then wrote a letter to Franzese on July 2, 1984, stating that "we are no longer able to allow Miami Gold Productions, Inc. to participate as a sponsor of the USA Today/Michael Jackson Victory Tour Contest." The letter went on to say

As you know, your participation was to be consistent with the ethics and ideals of USA TODAY.

Due to the recent unfavorable publicity concerning you and Miami Gold Productions, we are compelled to take this step and rescind the arrangement.

As you are aware, the focus of this contest is on America's youth and young adults. We feel that the recent publicity would have a serious adverse effect on the image and reputation for integrity of USA TODAY and the Michael Jackson Victory Tour Contest. While we are certainly aware that the fact of an indictment is not the same as conviction on the charges that have been leveled, our principal concern must be on the image of

USA TODAY and the contest in the minds of America's young people. This is and has been essential for us, as you know.

We regret the timing of the adverse publicity concerning your organization, but under the circumstances, we have no other choice in the matter.

USA Today then withdrew references to Miami Gold from the subsequent promotional ads. The next ad published, however, included a photograph of a model wearing a white satin jacket on which could be read "Cry of the City". This was apparently an oversight on the part of the defendant which has undertaken to eliminate all reference to Miami Gold and its movie from future publicity.

\* \* \*

By this motion, Miami Gold demands a preliminary injunction barring the defendant from publishing any publicity for the contest unless Miami Gold is listed as a sponsor with billing equal to other sponsors.

Miami Gold contends it will be irreparably harmed by loss of the goodwill it would derive from a publicized position as co-sponsor of the contest.

Defendant contends it would be seriously harmed by listing Miami Gold as a sponsor of its contest. The affidavit of its publisher states that USA Today is a relatively new publication launched in 1982, that it is "designed to appeal to advertisers who want to reach an audience that is known as 'upscale' ..., people who are described by advertisers as well-educated, sophisticated, upbeat and forward looking ...", that in order to appeal to those advertisers "USA Today must establish credibility in a market where integrity and a reputation for quality are absolutely essential to survival", and that association of USA Today with persons charged with racketeering "will harm the newspaper's image for good judgment and for integrity."

\* \* \*

■ I conclude that Miami Gold has not shown entitlement to a preliminary injunction. The issue is not whether it can show a cause of action for breach of contract, but whether it can satisfy the test of *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2 Cir.1979) (per curiam) for preliminary injunctive relief.

I conclude first that Miami Gold has not shown it will suffer irreparable harm if a preliminary injunction is not granted. Assuming Miami Gold establishes a breach of contract, it can be fully compensated in the usual fashion, by an award of damages. This reason alone requires denial of a preliminary injunction.

Second, Miami Gold fails to satisfy the substantive portion of the *Jackson Dairy* test that requires a showing either of likelihood of success on the merits, or at least a fair question for litigation with the balance of hardships tipping decidedly in the applicant's favor.

■ The likelihood of success refers not to the likelihood of establishing a cause of action but to the likelihood of obtaining injunctive relief. It is most doubtful by reason of First Amendment considerations whether plaintiff can obtain an injunction barring USA Today from publishing its promotions without including Miami Gold. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *New York Times Company v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974).

Plaintiff's contention that this, being an advertisement, is outside the scope of such First Amendment consideration is incorrect. *See Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976); *Quinn v. Aetna Life & Casualty Co.*, 482 F.Supp. 22 (E.D.N.Y.1979), *aff'd*, 616 F.2d 38 (2 Cir.1980); *Person v. New York Post Corp.*, 427 F.Supp. 1297 (E.D.N.Y.), *aff'd*, 573 F.2d 1294 (2 Cir.1977). Factors that may be found to justify an injunction of publication are not present here, *see First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978); *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 93

S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973); *Central Hudson Gas v. Public Service Comm'n of New York,* 447 U.S. 557, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

Plaintiff's reliance on *Dino DeLaurentis Cinematografica, S.p.A. v. D–150, Inc.,* 366 F.2d 373 (2 Cir.1966), is unconvincing. It is true that case did enjoin the exhibition of a movie without use of the contractually promised (and publicized) projection device. The case is, however, distinguishable on at least three grounds. First, the injunction bore no relationship to content; second, the case long antedates the decisions recognizing the applicability of the First Amendment to commercial speech; and third, there was no showing of harm resulting from grant of the injunction.

Finally, if Miami Gold were deemed to have satisfied the less exacting branch of the *Jackson Dairy* test, by demonstrating a fair question for litigation, it has failed to make a showing satisfying the second element of that test—that the balance of hardship tips decidedly in its favor. In view of the availability to plaintiff of money damages if it proves entitlement, and in view of defendant's creditable showing of the harm it would suffer if required to be associated in its promotion with Miami Gold, I do not find that the balance of hardships tilts in plaintiff's favor.

A preliminary injunction is denied.