**SAMOA AVIATION, INC., dba SAMOA AIR, Plaintiff**

**v.**

**ROBERT G. BENDALL, PACE AVIATION, LTD. and PAL AIR INTERNATIONAL, INC., Defendants**

High Court of American Samoa
Trial Division

CA No. 50-95

June 13, 1995

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Marshall Ashley
 For Defendants, Togiola T.A. Tulafono

Preliminary Injunction:

## INTRODUCTION

This matter arises out of two agreements in 1988, whereby plaintiff Samoa Aviation, Inc., dba Samoa Air ("Samoa Air") gained possession of two DeHavilland Twin Otter aircraft ("N711AS") and ("N28SP"), from defendants Robert G. Bendall ("Bendall"), Pace Aviation, Ltd. ("Pace Aviation"), and Pal Air International, Inc. ("Pal Air").

Samoa Air is incorporated and licensed to do business in American Samoa that provides exclusive air service to the Manu`a Islands, as well as scheduled flights to Western Samoa and Tonga. Bendall is the president and sole shareholder of Pace Aviation and Pal Air, both Nevada corporations, that purchase, lease, and sell aircraft and aircraft parts and equipment. Bendall is also a shareholder in Samoa Air. As between defendants, it appears that Pace Aviation acquired Pal Air's interests in N711AS in 1992 and in N28SP in 1993.

The original and a copy of the agreement for N711AS is in evidence. At this point, however, neither the original nor a copy of the agreement for N28AS has been produced. Samoa Air alleges that the parties entered into lease purchase agreements for the aircraft and since the agreements have performed under their own terms, Samoa Air now demands title to the aircraft. Defendants contend that the aircraft were merely leased to Samoa Air and, therefore, now demand the return of the aircraft.

On April 28, 1995, Samoa Air filed a complaint seeking injunctive relief, declaratory judgment and money damages against defendants. That same day, upon Samoa Air's application, we issued a temporary restraining order enjoining defendants from interfering in any way with the aircraft and equipment operated by Samoa Air, thereby preserving the status quo pending a hearing on a preliminary injunction. Samoa Air's application for preliminary injunction came regularly for hearing on June 1 and 2,

1995. All parties were present and represented by counsel.

## STANDARD OF REVIEW

■ The court may issue a preliminary injunction only after a hearing in which "sufficient grounds . . . has been established by a preponderance of the evidence adduced." A.S.C.A. § 43.1301(g). In order for this court to find sufficient grounds for the issuance of a preliminary injunction, we must conclude that:

> (1) there is a substantial likelihood that the applicant will prevail · on the merits and that a permanent injunction will be issued against the opposing party; and (2) great or irreparable injury will result to the applicant before a full and fair trial can be fairly held on whether a permanent injunction should issue.

A.S.C.A. § 1301(j). *See Le Vaomatua v. American Samoa Gov't,* 23 A.S.R.2d 11, 15 (Land & Titles Div. 1992). Although neither of these factors is decisive, "likelihood of success on the merits is often considered a threshold requirement for the granting of a preliminary injunction." *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.,* 627 F.2d 44, 49 (7th Cir. 1980).

## DISCUSSION

### I. *Substantial Likelihood of Success on Merits*

■ A preliminary injunction "will not be granted unless upon a showing of probable success . . . ." *Societe Comptoir De L'indus. v. Alexander's Dept. Store,* 299 F.2d 33, 35 (2d Cir. 1962) (the court has the discretion to issue a preliminary injunction if it finds that the movant has made a sufficient factual showing that he will prevail at trial). "A party seeking preliminary injunction need not show with absolute certainty that he will prevail on the merits," *Gartrell v. Knight,* 546 F. Supp. 449, 455 (N.D. Al. 1982), nor is a movant "required to prove a greater than fifty percent likelihood that they will prevail on the merits." *Doe v. Secret Service Sys.,* 557 F. Supp. 937, 941 (D. Minn. 1983) (*citing Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (court rejected the application of a mathematical equation for probability of success in favor of an approach flexible enough to encompass the particular circumstances of each case).

A movant merely needs to raise "questions so serious and difficult as to

103

call for more deliberate consideration," *id.*; "or at least demonstrate a fair question for litigation." *Miami Gold Prod., Inc. v. Gannett Co.*, 593 F. Supp. 672, 675 (S.D.N.Y. 1984); *Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 486 F. Supp. 1047, 1057 (N.D. Ill. 1980) (a "good chance" of success was sufficient to satisfy this test).

Samoa Air, to demonstrate a "good chance" that Bendall and Pal Air intended to sell the aircraft to Samoa Air at the time of the agreements, entered into evidence Bendall's letter of July 28, 1988, to the bankruptcy receiver, accompanying a bid to purchase the assets of South Pacific International Airways, including N711AS and N28SP, and expressing intention to lease and later transfer ownership of those assets to Samoa Air. It also submitted an amortization schedule, attached to original agreement Samoa Air and Pal Air, for N711AS, and a copy of a bill of sale to Samoa Air in 1994 for that aircraft, and a copy of an amortization schedule for N28SP. The amortization schedules name a "price," an "interest rate," and list the amount payable each month for the aircraft. Samoa Air argues that the amortization schedules are written evidence that the parties intended to enter into lease purchase agreements rather than lease agreements.

Bendall claims that the amortization schedules were only drafted as part of his "open book policy" to show Samoa Air how the lease payments were calculated. Samoa Air acknowledges that the document signed by the parties for N711AS was entitled "Lease Agreement," and not "lease purchase agreement," but it declares that this was required by Bendall and Pal Air in order to satisfy creditors if Samoa Air happened to become insolvent. Instead, Samoa Air alleges that Bendall and Pal Air must have consented to a lease purchase agreement since Bendall stapled, in his usual manner, the amortization schedule to the original agreement for N711AS at the time of execution.

Samoa Air asserts that the bill of sale for N711AS, executed by Bendall and Pace Aviation at Samoa Air's request, was issued because the parties agreed that the payments for the aircraft were complete and that Samoa Air should receive title. Defendants, on the other hand, contend that Samoa Air requested the aircraft bill of sale since Samoa Air was seeking credit financing and needed to show Amerika Samoa Bank, inexperienced in such matters, the appearance of an appropriate bill of sale. Steve Watson, vice president of Amerika Samoa Bank, testified that the bank has vast experience in dealing with bills of sale and did not need an example, but instead had requested an original bill of sale from Samoa Air to secure a loan to Samoa Air. Bendall testified that when he discovered an attempt

to file the copy of the bill of sale with the Federal Aviation Administration, he destroyed the original.

We find that Samoa Air has sufficiently justified a more deliberate investigation into the merits of its claim. Although there is no conclusive evidence that the parties consented to lease purchase agreements, the evidence at this point preponderates in favor of finding that is what the parties intended.

## II. Great or Irreparable Injury

On the question of irreparable injury, we find that Samoa Air has made a sufficient showing of harm to itself, as well as to the people and Territory of American Samoa if a preliminary injunction is not issued. If defendants gain possession of the two aircraft in dispute, Samoa Air may be out of business. Samoa Air has testified that it provides exclusive air service to the Manu`a Islands of Ofu and Tau, as well as substantial scheduled flights to Western Samoa and Tonga, and that no other carrier is prepared to immediately begin service to the Manu`a Islands. Canceling these flights would hinder the ability of American Samoans to ship goods, conduct business, and visit family.

At the least Samoa Air would lose the large equity it alleges to have in the aircraft if the they are repossessed, transferred, or sold by defendants before the trial is completed. Bendall testified that defendants would not repossess the aircraft if a preliminary injunction was not issued, but the court does not find this persuasive since there is no guarantee that he may not change his mind. Bendall also requested that the court name a trustee to oversee Samoa Air's matters and order the execution of a short term lease between defendants and Samoa Air. It is not the court's role to become experts in the airline business or to force any of the parties to enter into a contract. Instead, our role is to maintain the status quo until *this action is properly decided* on its merits.

### ORDER

For good cause shown, Samoa Air's application for a preliminary injunction is granted. Accordingly, during the pendency of this action or until further order of the court, defendants, together with their officers, servants, employees, and attorneys, and those persons acting in concert or participation with them, are hereby enjoined from selling, transferring, or encumbering, or attempting to sell, transfer, or encumber, or from taking possession of, attempting to take possession of, removing, or attempting

105

to remove from American Samoa or elsewhere, any of the aircraft, including but not limited to N711AS and N28SP, equipment or parts, currently owned or possessed by Samoa Air, so long as the undertaking, as required by law, and presently filed by Samoa Air in the sum not to exceed $500,000, with James A. Porter and Constance Marie Porter as personal sureties, remains in full force and effect.

It is so ordered.